## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BLH TOPCO LLC, *et al.*,[1] | Case No. 25-10576 (CTG) |
| Debtors. | (Jointly Administered) |
| | **RE: D.I. 232, 242, 251, 278, 292, 314, 331, 346** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING MODIFIED FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF REORGANIZATION

BLH TopCo and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") having filed the *Modified First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* [D.I. 232]   (as may be modified in accordance with its terms, the "**Plan**"); and this Court having  approved the disclosures in the Plan on an interim basis and authorized solicitation on the Plan in accordance with certain procedures set forth therein [D.I. 211] (the "**Interim Approval and Procedures Order**");[2] and upon the Plan Supplements [D.I. 242, 251, 278, 292, 314, 331, and 346]; and upon the filed affidavits of service in connection with solicitation on the Plan [D.I. 219, 237, 244, 253, 255, 275, 280, 281, 296, 307, 316, 333, 345, and 347] (the "**Solicitation Certificates**"); and upon the *Declaration of Brian Karpuk Regarding the Solicitation and Tabulation of Votes on the Modified First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* [D.I. 285] (the

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: BLH TopCo LLC (9009); BLH HoldCo LLC (7735); BLH Acquisition Co., LLC (5779); BLH Restaurant Franchises LLC (8093); and BLH White Marsh LLC (2950).  The Debtors' mailing address is 15305 Dallas Parkway, 12th Floor, Addison, TX 75001.

[2]     Capitalized terms used and not defined herein have the meanings ascribed in the Plan or the Interim Approval and Procedures Order, as applicable.

"**Voting Certification**"); and upon the *Declaration of Leslie Crook in Support of Confirmation of the Modified First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* [D.I. 309] (the "**Crook Declaration**"); and upon the *Debtors' Memorandum of Law in Support of Confirmation of the Modified First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* [D.I. 308]; and the Court having conducted a hearing to consider approval of the adequacy of the disclosures in the Plan on a final basis and confirmation of the Plan on September 22, 2025 (the **"Confirmation Hearing"**); and upon any evidence adduced and offered and the statements and arguments of counsel at any Confirmation Hearing; and the Court having reviewed all filings in connection with confirmation and having heard all parties desiring to be heard; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     <u>Findings and Conclusions</u>.  The findings of fact and conclusions of law set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over these Cases pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before the Court and in this District pursuant to 28 U.S.C.  §§ 1408 and 1409.

C.     <u>Case Status</u>.  The Debtors commenced these Cases on March 26, 2025.  The Debtors have continued to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested or appointed in these Cases.

On April 11, 2025, the Office of the United States Trustee for the District of Delaware appointed the Committee [D.I. 66].

D.    <u>Adequate Information.</u>  The Plan contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code.

E.    <u>Notice and Service</u>.  The Voting Certification and the Solicitation Certificates evidence the transmittal and service of the Plan and related solicitation materials and notices in accordance with the Interim Approval and Procedures Order.  Such transmittal and service constitutes due, adequate and sufficient notice of the Plan and the Confirmation Hearing under the circumstances to all parties entitled to such notice under the Bankruptcy Code and Bankruptcy Rules, and no other or further notice is necessary or required.

F.    <u>Solicitation</u>.  As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code and the Bankruptcy Rules, and the Interim Approval and Procedures Order.

G.    <u>Plan Supplement</u>.  The Plan Supplement, as amended or supplemented from time to time, was filed on July 7, 2025 [D.I. 242], July 14, 2025 [D.I. 251], July 25, 2025 [D.I. 278], August 4, 2025 [D.I. 292], and August 7, 2025 [D.I. 314], August 26, 2025 [D.I. 331], and September 8, 2025 [D.I. 346].  The information and documents comprising the Plan Supplement and the amendments or supplements thereto are integral to the Plan.  Under the circumstances, the filing and service of such documents as set forth in the Interim Approval and Procedures Order constitutes due, adequate and sufficient notice thereof to all parties entitled to such notice under the Bankruptcy Code and Bankruptcy Rules, and no other or further notice is necessary or required. Consistent with the terms of the Plan, the Debtors reserve rights to alter, amend, update, or modify the Plan Supplement in accordance with the terms thereof.

H.      Burden of Proof.  The Debtors have met their burden of proving the adequacy of the disclosures in the Plan, and the elements of sections 1129(a) and (b) of the Bankruptcy Code necessary to confirm the Plan, by a preponderance of the evidence.

I.      Section 1125(e).  Based on the record before the Bankruptcy Court and the record of these Cases, the Debtors and their respective professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in the Plan.

J.      Bankruptcy Rule 3016.  The Plan is dated and identifies its proponent in accordance with Bankruptcy Rule 3016(a).  The Plan describes in specific and conspicuous language all acts to be enjoined and identifies the entities subject to such injunction in accordance with Bankruptcy Rule 3016(c).

K.      Section 1129(a)(1).  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as the plan proponent, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

L.      Section 1129(a)(2).  The Debtors have complied with all applicable provisions of the Bankruptcy Code, including without limitation, sections 1122, 1123, 1124, 1125 and 1126 of

the Bankruptcy Code, the Bankruptcy Rules, the Interim Approval and Procedures Order, and other orders of the Court.

M.    <u>Section 1129(a)(3)</u>.  The Plan has been proposed by the Debtors in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In making this determination, the Court has considered the circumstances and record of these Cases and the process leading to the filing of the Plan and the Confirmation Hearing.  The Plan is the outcome of thorough, arm's-length negotiations between the Debtors, the Committee, the Lender, counterparties to executory contracts and unexpired leases, vendors, and other key stakeholders, and has received strong support from creditors.  The Plan is proposed to effect a successful reorganization of the Debtors, enable the Debtors to emerge as a value maximized, healthy going concern and, accordingly, is consistent with the objectives and purposes of the Bankruptcy Code.

N.    <u>Section 1129(a)(4)</u>.  The payments made or to be made by the Debtors to professionals for services or costs in connection with the Plan or incident to these Cases, either has been approved by or is subject to the approval of the Court as reasonable.  Thus, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

O.    <u>Section 1129(a)(5)</u>.  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity of the Oversight Agent proposed to serve after the Effective Date has been adequately disclosed in the Plan Supplement.  The appointment of the Oversight Agent, is consistent with the interests of creditors and with public policy, including because the Committee has participated in the selection of the Oversight Agent and no objection to the proposed Oversight Agent has been filed.

P.    <u>Section 1129(a)(6)</u>.  The Plan does not provide for rate changes by any of the Debtors.  Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable.

Q.    Section 1129(a)(7).  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis provided in the Plan Supplement (i) is reasonable, credible and persuasive, (ii) has not been controverted by other evidence, and (iii) establishes that each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

R.    Section 1129(a)(8).  The Plan designates seven Classes of Claims and Interests, and identifies Classes 1 and 2 as Unimpaired, and Classes 3, 4, 5, 6 and 7 as Impaired.  Class 3 and Class 4 have accepted the Plan in accordance with section 1126(c) of the Bankruptcy Code. However, section 1129(a)(8) of the Bankruptcy Code has not been satisfied because Class 7 and Class 8 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Notwithstanding such rejection, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code as set forth below.

S.    Section 1129(a)(9).  The treatment of Administrative Claims and Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

T.    Section 1129(a)(10).  Class 3 and Class 4 have voted to accept the Plan, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

U.    Section 1129(a)(11).  The Court has reviewed the *Declaration of Michael Zmudosky in Support of Louie Restaurants, LLC's Adequate Assurance* [D.I. 361] (the "**Zmudosky Declaration**") stating that, pursuant to a certain *Assignment and Assumption Agreement* (the "**Assignment Agreement**") by and among Bar Louie LLC, as assignor, and QSR

10, LLC, as assignee, QSR 10, LLC acquired the Prepetition Credit Agreement Secured Claims and the DIP Claims and stating further that, as the Holder of the Secured Lender's Secured Claim, on the Effective Date, QSR 10, LLC will receive 100% of the New Common Equity. The evidence related to the requirements of section 1129(a)(11) of the Bankruptcy Code is reasonable, credible and persuasive, and establishes that confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors or any successor thereto, thereby satisfying section 1129(a)(11) of the Bankruptcy Code.

V.    Section 1129(a)(12). The Plan provides for the payment by the Effective Date of all fees required under 28 U.S.C. § 1930(a), and thereby satisfies section 1129(a)(12) of the Bankruptcy Code.

W.    Sections 1129(a)(13)-(16). The Debtors do not owe retiree benefits (as defined under section 1114 of the Bankruptcy Code), and accordingly section 1129(a)(13) does not apply to the Plan. Additionally, sections 1129(a)(14)-(16) of the Bankruptcy Code apply to individuals or nonprofit entities and are not applicable to these Cases.

X.    Section 1129(b). All of the requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8), are satisfied by the Plan. Classes 5, 6 and 7 are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code (the "**Rejecting Classes**"). The Plan's classification scheme, including its treatment of the Rejecting Classes, is appropriate as similarly situated Claims or Interests receive substantially similar treatment under the Plan, and valid business, factual, and legal reasons exist for the separate classification and treatment of the Claims or Interests across the various Classes established under the Plan. In addition, no holder of any Claim or Interest that is junior to the Claims or Interests in any Rejecting Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Class is

receiving or retaining property under the Plan with a value greater than the Allowed amount of

Claims in such Class.  Therefore, the Plan does not discriminate unfairly, and is fair and equitable,

with respect to each of the Rejecting Classes.  Accordingly, the Plan satisfies the requirements of

and may be confirmed under section 1129(b) of the Bankruptcy Code.

Y.    Section 1129(c).  The Plan is the only plan that has been filed in these Cases, and

accordingly the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

Z.    Section 1129(d).  The principal purpose of the Plan is not the avoidance of taxes or

the avoidance of the application of section 5 of the Securities Act.  Accordingly, the Plan satisfies

the requirements of section 1129(d) of the Bankruptcy Code.

AA.    Executory Contracts and Unexpired Leases.  Article VII of the Plan provides for

the rejection of all Executory Contracts and Unexpired Leases that are not stated on the Assumed

Executory Contract and Unexpired Lease List or as otherwise expressly stated in the Plan.  The

rejection of all remaining Executory Contracts and Unexpired Leases is in the best interest of the

Debtors, their Estates and their creditors.  Article VII of the Plan is consistent with section

1123(b)(2) of the Bankruptcy Code and satisfies the requirements of section 365 of the Bankruptcy

Code.

BB.    Exculpation, Releases, and Injunction.  The Court has jurisdiction under 28

U.S.C. §§ 1334(a) and (b) to approve the exculpation, releases, and injunction provisions in the

Plan and this Order.  Section 105(a) of the Bankruptcy Code permits approval of the foregoing

provisions set forth in, among other articles, Article XI of the Plan because, as has been established

based upon the record in these Cases, such provisions (i) were integral to achieving settlement

among the various parties in interest and are essential to the formulation and implementation of

the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on

the Debtors' Estates, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtors, their Estates, and all parties in interest.  Accordingly, based upon the record of these Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at any Confirmation Hearing, this Court finds that the exculpation provision set forth in Section 11.1, the releases set forth in Section 11.2, and the related injunction in Section 11.3 of the Plan are consistent with the Bankruptcy Code and applicable law.

CC.    <u>Consummation</u>.  Each of the conditions precedent to consummation of the Plan, as set forth in Article XIV, is reasonably likely to be satisfied in accordance with the terms thereof or waived.  All documents necessary to implement the Plan, and all other relevant and necessary documents have been developed and negotiated in good faith and at arms-length and shall, upon completion of documentation and execution, and subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

DD.    <u>Waiver of Stay</u>.  Cause exists under the circumstances to waive the stay imposed by Bankruptcy Rule 3020(e).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    <u>Adequate Information.</u>  The Plan, as supplemented by the Plan Supplement, is hereby approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code, and any objections to the adequacy of the information contained therein that have not been withdrawn, waived or otherwise resolved prior, or on the record at the Scheduled Confirmation Hearing, are hereby overruled on the merits and denied.

2.    <u>Confirmation.</u> The Plan, in the form attached hereto as **Exhibit 1**, and including all documents of the Plan Supplement, as modified by this Order, is hereby approved and confirmed pursuant to section 1129 of the Bankruptcy Code.  All objections or reservations of rights

pertaining to confirmation of the Plan that have not been withdrawn, waived or otherwise resolved prior to, or on the record at, the Confirmation Hearing, are hereby overruled on the merits and denied.

3. <u>Amendments, Modifications or Alterations.</u>   To the extent the Plan has been amended, modified or supplemented subsequent to solicitation, such revisions do not adversely affect the treatment of any Claims or Interests under the Plan and are consistent with Section 13.10 of the Plan, and, pursuant to Bankruptcy Rule 3019, such revisions do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code.

4. <u>Effective Date</u>.   The Effective Date of the Plan shall occur on the date, as determined by the Debtors, when the conditions set forth in Section 14.2 of the Plan have been satisfied or waived in accordance with the terms thereof<u>.</u>

5. <u>Binding Effect</u>.   The Plan shall be binding on the Debtors and the Estates, and all Entities from and after the Effective Date, as well as the respective heirs, executors, administrators, successors, or assigns, if any, of each of the foregoing<u>.</u>

6. <u>Exemption.</u>   The issuance, transfer or exchange of any security under the Plan, or the making or delivery of an instrument of transfer of property under the Plan, shall not be subject to any stamp or similar tax to the fullest extent provided by section 1146(a) of the Bankruptcy Code, whether such action is taken by the Debtors or any other Person.   The issuance of the New Common Equity shall be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities, to the fullest extent provided by section 1145 of the Bankruptcy Code.

7.      <u>Appointment of the Oversight Agent.</u>   On the Effective Date, Jeffrey I. Golden, Esquire, of Golden Goodrich LLP, shall be appointed as Oversight Agent, to serve in such capacity as set forth in the Plan, with compensation to be paid from the Class 4A Recovery Pool.  The Debtors or the Reorganized Debtors, as the case may be, shall manage the sale of liquor licenses. Neither the Debtors nor the Reorganized Debtors shall have any liability to pay any amount in respect of the prosecution of the Preference Causes of Action.

8.      <u>Compromise.</u>  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan and the entry of this Order constitutes approval of such compromise and settlement. Without limiting the foregoing, consideration for the settlement between the Estates and the Committee, as embodied in the Plan, is reasonable and adequate, and entry of this Order shall be deemed approval under Bankruptcy Rule 9019 of the Estates' settlement with the Committee, subject in all respects to the provisions of the Plan and this Order.

9.      <u>Exculpation</u>. Section 11.1 of the Plan is hereby approved in its entirety and, subject to the occurrence of the Effective Date, is immediately effective and binding in accordance with its terms.

10.      <u>Releases.</u> Section 11.2 of the Plan is hereby approved in its entirety and, subject to the occurrence of the Effective Date, is immediately effective and binding in accordance with its terms.

11.      <u>Injunction</u>. Section 11.3 of the Plan is hereby approved in its entirety  and, subject to the occurrence of the Effective Date, is immediately effective and binding in accordance with its terms.

12.    <u>Rejection of Executory Contracts and Unexpired Leases.</u>  As of the Effective Date, except as expressly set forth in the Plan, all Executory Contracts and Unexpired Leases of the Debtors are hereby rejected, unless such contract or lease: (i) was previously was assumed, assumed and assigned, or rejected in these Cases or (ii) is expressly stated in the Plan or on the Assumed Executory Contract and Unexpired Lease List to be assumed.  In addition to and not in limitation of anything stated in Section 7.4 of the Plan, and for the avoidance of doubt, nothing herein or in the Plan or this Order shall be deemed to effect a rejection of any insurance policies and the Reorganized Debtors shall be entitled to enforce all rights of the Debtors relating thereto.

a.    Section 7.3 of the Plan is deleted and replaced in its entirety with the following:

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and the cure of defaults associated therewith in accordance with section 365(b) of the Bankruptcy Code, including the payment of any Cure Claim as adjudicated or agreed upon with the Debtors, shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including those arising from or triggered by the filing of these Cases and defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease, in each case at any time prior to the effective date of assumption. For the avoidance of doubt, assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not override or otherwise release any indemnification obligations in such Executory Contract or Unexpired Lease. Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed following notice to the applicable counterparty, or action, order or approval of the Bankruptcy Court. Notwithstanding anything in this Plan, the Plan Supplement, as amended, the Confirmation Order, or otherwise to the contrary, any non-Debtor party to any such Executory Contract or Unexpired Lease shall be entitled to receive, and nothing herein shall release or result in the satisfaction of such party's right to receive,

payment in full of any Cure Claim and all amounts that have accrued, arisen or are otherwise accruing as of the Effective Date (but are not yet due or in default as of the Effective Date) to be paid when due in accordance with the terms of any such Executory Contract or Unexpired Lease; provided, further, with respect to any Unexpired Lease of nonresidential real property, until such time that such Unexpired Lease of nonresidential real property is assumed or rejected, pursuant to this Plan or otherwise, the Debtors (or, if after the Plan Effective Date, the Reorganized Debtors) shall remain liable for all obligations arising under the Unexpired Leases as of the Effective Date that were not otherwise required to be asserted as a Cure Claim, including: (a) for amounts owed or accruing under such Unexpired Lease that are unbilled and/or not yet due as of the applicable cure objection deadline or the Effective Date, as applicable, regardless of when such amounts or obligations accrued, including on account of common area maintenance, insurance, taxes, and similar charges; (b) any regular or periodic adjustment or reconciliation of charges under such Unexpired Lease that are not due and have not been determined as of the applicable cure objection deadline; (c) any percentage of rent that is not yet due under such Unexpired Lease as of the Effective Date; (d) obligations arising after the Effective Date under such Unexpired Lease; and (e) any obligations to indemnify the non-Debtor counterparty under such Unexpired Lease for any claims of third parties pursuant to the terms of the Unexpired Lease, which were not known, asserted, or liquidated by the time of the applicable cure objection deadline.

Notwithstanding anything to the contrary in this Plan, the Plan Supplement, as amended, or the Confirmation Order, any Unexpired Lease assumed under the Plan on the Effective Date shall be assumed subject to all of its terms and re-vest in and be fully enforceable by the applicable counterparties to such Unexpired Lease in accordance with its terms, except as such terms may have been modified by written agreement by and among the Debtors or Reorganized Debtors, as applicable and lease counterparty; and the Debtors or Reorganized Debtors shall be responsible for all obligations as and when they come due under the Leases, including, but not limited to, any accrued or accruing obligations not yet billed under the Leases, irrespective of the period in which they relate, to be paid when billed in accordance with the terms of the Leases.  In addition, nothing in this Plan or the Confirmation Order shall release the Debtor and/or the Reorganized Debtors, as applicable,  and the counterparty to such Unexpired Lease does not waive or release any rights or claims it may have against the Debtors and/or the Reorganized Debtors, as applicable, with respect to claims arising from the Debtors' use and occupancy of the Premises (whether pre-petition or post-petition), for which the Debtors have or had a duty to indemnify Landlord pursuant to the Lease, including but not limited to, third party claims, obligations to maintain the Premises free and clear of any liens by mechanic's, materialmen or other similar claimants and any claims relating to failure to comply with such obligations under the Lease. For the avoidance of doubt, nothing in this Plan or the Confirmation shall waive or defer any rights to indemnification that exist under an Unexpired Lease, and the Debtors or

Reorganized Debtors shall not be released from any of their insurance and/or indemnification obligations under such Unexpired Lease.

b.      Notwithstanding anything stated in Section 8.13 of the Plan, the Reorganized Debtors shall not retain and may not enforce any rights to commence any Released Preference Cause of Action.

c.      Notwithstanding anything stated in section 7.2, 7.3, 9.3, or 10.4 no claim shall be disallowed without notice to the claimant.

d.      Notwithstanding anything to the contrary herein or in the Plan (including Section 9.9 thereof), neither the Plan nor this Confirmation Order shall modify the rights, if any, of any counterparty to an Executory Contract or Unexpired Lease to assert any right of setoff or recoupment that such party may have under applicable bankruptcy Law or non-bankruptcy Law, including, but not limited to, the (i) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Lease(s) with the Debtors, or any successors to the Debtors, under this Plan, (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation, or (iii) assertion of setoff or recoupment as a defense, if any, to any Claim or action by the Debtors, the Reorganized Debtors, or any successors of the Debtors.

e.      Pursuant to section 554(a) of the Bankruptcy Code, property remaining as of the Effective Date ("**Remaining Property**") at any premises previously leased under a lease rejected under the Plan ("**Rejected Premises**")[3] is deemed abandoned by the Debtors as of the Effective Date.   Notwithstanding the foregoing, all secured parties holding an interest in any Remaining Property shall have until on or before the thirtieth (30th) day after the Effective Date (the "**Removal Deadline**") to remove or retrieve any such Remaining Property subject to their

---

[3] For the avoidance of doubt, "Remaining Property" excludes licenses, intellectual property and all forms of intangible personal property.

interests, which removal must be coordinated with the applicable counterparty of the Rejected Premises.  For the avoidance of doubt, with respect to the Rejected Premises located at the Northridge Fashion Center (9301 Tampa Avenue, Northridge, CA), Village at Jordan Creek (7105 Mills Civic Parkway, Des Moines, IA) and Virgina Gateway (14081 Promenade Comons Street, Gainesville, Virginia) (collectively, the "**Vacated Premises**"), all such Remaining Property subject to any secured parties' interests has already been removed, the Removal Deadline shall not apply, and the counterparties to to such Vacated Premises may use or otherwise dispose of any Remaining Property as of the Effective Date without further notice or any liability to the Debtors or Reorganized Debtors, as applicable, and any consenting third parties.  From and after the Removal Deadline, any Remaining Property that remains at any Rejected Premises shall be free and clear of all liens, claims, rights, encumbrances, and interests, and such lease counterparty may use or otherwise dispose of any such Remaining Property from and after the Removal Deadline without further notice to the Debtors or Reorganized Debtors, as applicable, or any consenting third parties; provided, except as expressly set forth herein, the rights, claims, and remedies, if any, of all persons other than the Detors and their estates with respect to Remaining property under applicable law are hereby preserved; provided, however, the DIP Lender, Lender, Secured Lender and Prepetition Lender, as applicable, consent to the release of their interest (if any), in, and liens on (if any) the Remaining Property, and any such interests and liens are hereby released.

    f.  <u>US VI Downey, LLC Cure.</u>  Notwithstanding anything to the contrary in the Second Amended List of Assumed Executory Contracts and Unexpired Leases [D.I. 292], as further amended and supplemented from time to time, the cure amount of zero for US VI Downey, LLC, is subject to the third lease amendment between lessor and lessee and the lessee's payment of ordinary course post-petition lease charges.

g.      Saucon Valley.  Notwithstanding anything stated in the Plan Supplement to the contrary, the Debtors' lease for the premises (the "**SV Premises**") located at The Promenade Shops at Saucon Valley, Center Valley, Pennsylvania (the "**Saucon Valley Lease**") is and shall be rejected on the earlier to occur of either the Confirmation Date or September 30, 2025.  On or before the tenth (10th) day after the Confirmation Date, Saucon Valley Lifestyle Center, L.P. (the "**SV Landlord**") shall pay to the Reorganized Debtors $83,558.79.  The SV Landlord shall have the right to file a post-petition administrative claim (the "**SV Administrative Claim**") on or before the twenty-first (21st) day after the Effective Date and agrees to limit such claim to any necessary costs incurred to remove any liens against the SV Premises related to the Debtor's occupation of the SV Premises.  In addition to any SV Administrative Claim, the SV Landlord shall have an allowed lease rejection damages claim in the amount of $503,381 (the "**SV Rejection Damages Claim**").  The SV Landlord need not file a proof of claim related to the SV Rejection Damages Claim.  The SV Administrative Claim, if any, and the SV Rejection Damages Claim shall be treated in accordance with the Plan.

13.     Cure Matters.  Notwithstanding anything stated in or omitted from the Seventh Plan Supplement, the Cure Amount for the leases with the following counterparties are as follows:

a.      Music Factory Portfolio, LP for premises located at 360 W. Las Colinas Blvd., Suite 100, Irving, TX:  Cure Amount: $8,444.49;

b.      Baybrook LPC, LLC for premises located at 700 Baybrook Mall, Suite G 110, Friendswood, TX:  Cure Amount $3,000.00; and

c.      FR White Marsh, LLC and NVI Avenue, LLC for premises located at 81 33 Honeygro Boulevard, Store #8C, Baltimore, MD:  Cure Amount: $17,553.06.

14.     Released Preference Causes of Action.  Notwithstanding anything stated in or omitted from the Fourth Plan Supplement, Exhibit B-1: *First Amended Schedule of Released Preference Causes of Action* the "**Released Preferences Schedule**") shall be amended as follows:

    a.     #12 – "Brookfield Properties (USA) LLC" shall be modified to state "Music Factory Portfolio, LP c/o Brookfield Properties (USA) LLC";

    b.     #20 – "Federal Realty" shall be modified to state "FR White Marsh, LLC and NVI-Avenue LLC, as tenants-in-common, c/o Federal Realty"; and

    c.     Edward Don & Company shall be added to the Released Preferences Schedule.

15.    <u>Certain Ballots.</u>  Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the following creditors are deemed to have timely submitted a Ballot opting in to be a Releasing Party under the Plan, and shall be treated as opting in under the Plan, notwithstanding that such "Opt-In" elections were made after the Voting Deadline:

    a.     Federal Realty OP LP (t/a Virginia Gateway, Gainesville, VA)

    b.     GGP Northridge Fashion Center, LP; and

    c.     Village at Jordan Creek LLC.

16.    <u>Rejection Claims Bar Date.</u>  Notwithstanding anything stated in section 7.2 if the Plan, if the rejection of any Executory Contract or Unexpired Lease under the Plan gives rise to a Claim, the Holder of such Claim shall file a proof of Claim with the Claims Agent in accordance with Paragraph 7 of the Bar Date Order [D.I. 168].  Any Holder that does not timely file such proof of Claim shall not be treated as a Holder with respect to such Claim for any purpose of the Plan and shall be forever barred from asserting such Claim against the Debtors or their Estates.

17.    <u>Administrative Claims Bar Date.</u>  Except for Administrative Claims that are Assumed Liabilities, 503(b)(9) Claims, Professional Claims or Statutory Fees, Holders of Administrative Claims that are not Governmental Units must File a request for payment of such Claim, together with supporting documentation, no later than 21 days after the Effective Date. Any Holder that does not timely File such request shall not be treated as a Holder with respect to

such Claim for any purpose of the Plan and shall be forever barred from asserting such Claim against the Debtors or the Estates.

18.    <u>Professional Claims.</u>  All requests for payment of Professional Claims must be Filed no later than 30 days after the Effective Date.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate.  Any Professional Claims shall be paid in accordance with the Plan.  Consistent with negotiations of the Debtors and the Committee, the final order on DIP financing at D.I. 129 is amended by this Confirmation Order to increase the carve-out for the Committee's professional fees by $75,000, from the initial figure of $270,000 to $345,000.

19.    <u>Statutory Fees.</u>  Sections 5.1 and 5.4 of the Plan are hereby approved in their entirety, and, subject to the occurrence of the Effective Date, are immediately effective and binding in accordance with their terms.

20.    <u>Distributions.</u>  On and after the Effective Date, Distributions on account of Allowed Claims are authorized and the Debtors authorized to effectuate such Distributions, resolution, and treatment in accordance with the terms of the Plan.

21.    <u>Implementation.</u>  The Debtors are hereby authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan.  Having reviewed the Smudsky Declaration, QSR 10, LLC, is now the Holder of all Claims previously held by Bar Louie, LLC, and succeeds to all of the rights, duties, benefits and obligations of Bar Louie, LLC, under the Plan.  For the avoidance of doubt, as the Holder of Lender's Secured Claims, QSR 10, LLC, shall receive 100% of the New Common

Equity as of the Effective Date.  Notwithstanding the foregoing, Bar Louie, LLC, remains as Prepetition Administrative Agent and retains all duties and obligations of the Prepetition Administrative Agent under the Plan.  Notwistanding anything to the contrary herein or in the Plan, Bar Louie, LLC shall indemnify QSR 10, LLC and its successors and assigns for all Claims and Causes of Action arising before the Effective Date that would have been subject to the discharge, injunction, and release provisions in the Plan, but were not discharged or released due to lack of or inadequate notice of the commencencement of these chapter 11 cases, the Bar Date, the Confirmation Hearing, or any other notices in connection with these Cases.

22.    Governmental Authorization.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, filings and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Order.

23.    Provisions Regarding Liquor Licenses.  Nothing in the Plan or this Order releases, nullifies, precludes or enjoins the enforcement by any governmental unit of any police or regulatory liability that any entity would be subject to as the post-sale owner or operator of property after the Closing. Nor shall anything in the Plan or this Order limit any governmental unit in the exercise of its police or regulatory powers in accordance with 11 U.S.C. § 362(b)(4) or 28 U.S.C. § 959. Further, nothing in the Plan or this Order authorizes the transfer or assignment of any governmental license, permit, or registration without compliance with all applicable requirements and approvals under police or regulatory laws. Notwithstanding anything to the contrary in this Order or the Plan, the closing of any of these Cases shall not affect or impair the ability of the Reorganized Debtors to sell, transfer or dispose of any liquor license.  In addition to and not in limitation of anything stated in the Plan, for the avoidance of doubt, "Liquor License

Sale Proceeds" (as defined in the Plan) means the actual gross proceeds received by the Debtors or Reorganized Debtors through any form of direct sale of any liquor license for store locations that closed on or before the Effective Date, including liquor licenses related to all stores previously operated under leases rejected under the Plan.

24.    <u>EcoLab.</u> Notwithstanding anything to the contrary elsewhere in this Order or in the Plan, Ecolab Inc.'s pre-petition and post-petition rights of recoupment and setoff asserted in its filed proof of claim and under otherwise applicable non-bankruptcy law are preserved and unimpaired, and Ecolab is authorized to setoff the $9,777.20 reflected in its proof of claim against its pre-petition claim in the amount of $166,903.22, resulting in a net pre-petition unsecured claim of $157,126.02.

25.    <u>Provisions Regarding the United States.</u>  Notwithstanding any provision in the Plan or this Order: (1) nothing shall discharge, release, enjoin, impair or otherwise preclude (a) any Liability to the United States that is not a Claim, (b) any Claim of the United States arising after the Effective Date, or (c) any Liability of any entity or person to the United States arising after the Effective Date; (2) nothing shall affect or impair the exercise of the United States' police and regulatory powers against the Debtors or any non-debtor arising after the Effective Date; (3) nothing shall be interpreted to require the United States to novate or otherwise consent to the transfer of any federal contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (4) nothing shall affect any valid right of setoff or recoupment of the United States against any of the Debtors; *provided, however*, that the rights and defenses of the Debtors with respect thereto are fully preserved (other than any rights or defenses based on language in the Plan or this Order that may extinguish or limit setoff or recoupment rights); (5) nothing shall relieve any party from compliance with all licenses and

permits issued by governmental units in accordance with non-bankruptcy law; (6) nothing shall modify the scope of Section 505 of the Bankruptcy Code with respect to any Claims of the United States; (7) nothing shall confer jurisdiction on this Court with respect to the Claims, Liabilities and Causes of Action of the United States beyond the fullest extent otherwise permitted by applicable law; and (8) any Claim of the United States shall be entitled to postpetition interest thereon as otherwise provided for by the Bankruptcy Code; *provided, however*, that the rights and defenses of the Debtors with respect thereto are fully preserved (other than any rights or defenses based on language in the Plan or this Order that may extinguish or limit postpetition interest).

26.     Texas Taxing Authorities.  Notwithstanding anything to the contrary herein or in the Plan, the liens held by the Texas Taxing Authorities shall be retained against the property securing such claims, or the proceeds of the sales therefore, until the claims are paid in full with applicable post-petition interest.

27.     Committee Dissolution.  On the Effective Date, the Committee shall dissolve automatically, and its Professionals and members shall be released and discharged from all rights and duties arising from, or related to, these Cases, except as provided for in the Plan.

28.     Prior Orders; Agreements.  Subject to the occurrence of the Effective Date, and subject to the terms of the Plan and this Order, all prior orders entered in these Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder, and all motions or requests for relief by the Debtors pending before the Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors in accordance with the Plan.

29.     Notice of Effective Date.  Within two days after the Effective Date, the Debtors or shall File a notice of occurrence of the Effective Date, which shall identify the applicable deadlines for filing Proofs of Claim or requests on account of any Administrative Claim, Professional Claim,

or Claim for any damages from the rejection of any Executory Contract or Unexpired Lease pursuant to the Plan, with such notice to be served on all parties that received the Confirmation Notice.

30.     Construction; Interpretation.   The failure to include or specifically describe or reference any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety.  Except as expressly provided by this Order, each provision of the Plan is valid and enforceable in accordance with its terms and is nonseverable and mutually dependent. The Plan shall control in the event of any inconsistency with the Plan Supplement, except to the extent that the Plan Supplement expressly states that a specific provision controls.  This Order shall control in the event of any inconsistency with the Plan, Plan Supplement, or any other agreement, exhibit or document.

31.     Waiver of Stay; Final Order.   Notwithstanding Bankruptcy Rule 3020(e) or any other Bankruptcy Rule, this Order shall be effective and enforceable immediately upon entry.  This Order is a Final Order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

32.     Governing Law.  Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to principles of conflicts of law.

*[continued on following page]*

33.    <u>Jurisdiction.</u>   The Court shall retain jurisdiction over all matters arising in, arising under, and related to these Cases and the Plan from and after the Effective Date to the fullest extent that is legally permissible and provided for in the Plan.


**Dated: September 26th, 2025**          **CRAIG T. GOLDBLATT**
**Wilmington, Delaware**                 **UNITED STATES BANKRUPTCY JUDGE**