**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BLH TOPCO LLC, *et al.*,[1] | Case No. 25-10576 (CTG) |
| Debtors. | (Jointly Administered) |

## MODIFIED FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF REORGANIZATION

**RAINES FELDMAN LITTRELL LLP**
Thomas J. Francella, Jr. (No. 3835)
Mark W. Eckard (No. 4542)
824 North Market Street, Suite 805
Wilmington, DE 19801
Telephone: (302) 772-5803
Email: tfrancella@raineslaw.com
      meckard@raineslaw.com

*Counsel to the Debtors and Debtors in Possession*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: BLH TopCo LLC (9009); BLH HoldCo LLC (7735); BLH Acquisition Co., LLC (5779); BLH Restaurant Franchises LLC (8093); and BLH White Marsh LLC (2950). The Debtors' mailing address is 15305 Dallas Parkway, 12th Floor, Addison, TX 75001.

# TABLE OF CONTENTS

DISCLAIMER ............................................................................................................... vi

**Article I INTRODUCTION** ......................................................................................1

**Article II DEFINITIONS AND CONSTRUCTION OF TERMS** ...........................1

    2.1    Definitions.......................................................................................................1

    2.2    Rules of Interpretation ..................................................................................14

    2.3    Computation of Time ....................................................................................15

    2.4    Governing Law .............................................................................................15

    2.5    Reference to Monetary Figures.....................................................................15

    2.6    Reference to the Debtors or the Reorganized Debtors..................................15

    2.7    Controlling Document ..................................................................................15

**Article III BACKGROUND** .....................................................................................15

    3.1    Overview.......................................................................................................15

    3.2    Capital Structure ..........................................................................................16

    3.3    Challenges Before the Petition Date ............................................................16

    3.4    Prepetition Marketing Efforts ......................................................................16

    3.5    The Chapter 11 Cases ..................................................................................17

    3.6    The Committee..............................................................................................18

    3.7    Additional Documents and Information .......................................................19

**Article IV IMPORTANT DATES** ............................................................................19

**Article V TREATMENT OF UNCLASSIFIED CLAIMS** ......................................20

    5.1    Administrative Claims ..................................................................................20

    5.2    Priority Tax Claims ......................................................................................20

    5.3    Professional Claims .....................................................................................21

    5.4    Statutory Fees...............................................................................................21

**Article VI CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS** ..............................................................................................................22

    6.1    Classification of Claims and Interests..........................................................22

    6.2    Treatment of Classes of Claims and Interests .............................................23

    (a)    Class 1 — Other Priority Claims .................................................................24

    6.3    Special Provision Governing Unimpaired Claims.......................................27

    6.4    Elimination of Vacant Classes .....................................................................27

    6.5    Voting Classes; Presumed Acceptance by Non-Voting Classes..................27

i

| | 6.6 | Subordinated Claims | 27 |
|---|---|---|---|
| | 6.7 | Intercompany Interests | 28 |
| | 6.8 | Controversy Concerning Impairment | 28 |
| | 6.9 | Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code | 28 |
| **Article VII** | | **EXECUTORY CONTRACTS AND UNEXPIRED LEASES** | 28 |
| | 7.1 | Rejection of Executory Contracts and Unexpired Leases | 28 |
| | 7.2 | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 29 |
| | 7.3 | Cure of Defaults and Objections to Cure and Assumption | 30 |
| | 7.4 | Insurance Policies | 30 |
| | 7.5 | Director, Officer, Manager, and Employee Liability Insurance | 31 |
| | 7.6 | Employee and Retiree Benefits | 31 |
| | 7.7 | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 32 |
| | 7.8 | Reservation of Rights | 32 |
| | 7.9 | Non-Occurrence of Effective Date | 32 |
| | 7.10 | Contracts and Leases Entered Into After the Petition Date | 33 |
| **Article VIII** | | **MEANS OF IMPLEMENTING THE PLAN** | 33 |
| | 8.1 | General Settlement of Claims and Interests | 33 |
| | 8.2 | Restructuring Transactions | 33 |
| | 8.3 | Sources of Consideration for Plan Distributions | 34 |
| | 8.4 | Cash on Hand | **Error! Bookmark not defined.** |
| | 8.5 | Issuance and Distribution of the New Common Equity | 34 |
| | 8.6 | Exemption from Registration Requirements | 34 |
| | 8.7 | Corporate Existence | 35 |
| | 8.8 | Corporate Action | 35 |
| | 8.9 | Vesting of Assets in the Reorganized Debtors | 35 |
| | 8.10 | Cancellation of Notes, Instruments, Certificates, and Other Documents | 36 |
| | 8.11 | Effectuating Documents; Further Transactions | 36 |
| | 8.12 | Exemptions from Certain Taxes and Fees | 36 |
| | 8.13 | New Organizational Documents | 37 |
| | 8.14 | Preservation of Causes of Action | 37 |
| **Article IX** | | **PROVISIONS GOVERNING DISTRIBUTIONS** | 37 |
| | 9.1 | Timing and Calculation of Amounts to Be Distributed | 37 |

9.2     Distributions on Account of Obligations of Multiple Debtors ............................38

9.3     Distribution Agent ...........................................................................................38

9.4     Delivery of Distributions .................................................................................38

9.5     Manner of Payment ..........................................................................................39

9.6     Compliance Matters .........................................................................................39

9.7     No Postpetition or Default Interest on Claims .................................................40

9.8     Allocation Between Principal and Accrued Interest .........................................40

9.9     Setoffs and Recoupment ..................................................................................40

9.10    Claims Paid or Payable by Third Parties ..........................................................40

**Article X PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS**............................................................41

10.1    Allowance of Claims and Interests ...................................................................41

10.2    Claims Administration Responsibilities............................................................41

10.3    Estimation of Claims and Interests ..................................................................42

10.4    Adjustment to Claims Without Objection .........................................................42

10.5    No Distributions Pending Allowance................................................................42

10.6    Disallowance of Claims ...................................................................................42

10.7    Distributions After Allowance .........................................................................43

10.8    Single Satisfaction of Claims ..........................................................................43

10.9    No Interest .......................................................................................................43

**Article XI EXCULPATION, RELEASES AND INJUNCTIONS** ...........................43

11.1    Exculpation .....................................................................................................43

11.2    Releases...........................................................................................................44

11.3    Injunction ........................................................................................................45

11.4    Protection Against Discriminatory Treatment ..................................................46

11.5    Recoupment .....................................................................................................46

11.6    Reimbursement or Contribution .......................................................................46

11.7    Term of Injunctions or Stays............................................................................46

11.8    Document Retention ........................................................................................47

**Article XII CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING** .....................................................................................................................47

12.1    The Plan May Not Be Accepted........................................................................47

12.2    The Plan May Not Be Confirmed .....................................................................47

| 12.3 | The Plan May Require Modification | 48 |
| 12.4 | The Plan May Not Be Consummated | 48 |
| 12.5 | Distributions Under the Plan May Be Inconsistent With Projections | 48 |
| 12.6 | Risks Associated with Forward Looking Statements | 49 |
| 12.7 | The Plan May Result in Adverse Tax Consequences | 49 |

**Article XIII CONFIRMATION AND VOTING PROCEDURES** ........................................50

| 13.1 | Confirmation Procedures | 50 |
| 13.2 | Confirmation Requirements | 51 |
| 13.3 | Classification of Claims and Interests | 51 |
| 13.4 | Impaired or Unimpaired Status | 52 |
| 13.5 | Acceptance; Cramdown | 52 |
| | (a) **Unfair Discrimination** | 52 |
| | (b) **Fair and Equitable** | 52 |
| 13.6 | Feasibility | 53 |
| 13.7 | Best Interests | 54 |
| 13.8 | Solicitation Packages | 55 |
| 13.9 | Acceptance or Rejection of the Plan | 55 |
| 13.10 | Plan Amendment After Solicitation | 55 |

**Article XIV CONDITIONS TO THE EFFECTIVE DATE** .................................................56

| 14.1 | Conditions Precedent to Confirmation | 56 |
| 14.2 | Conditions Precedent to the Effective Date | 56 |
| 14.3 | Establishing the Effective Date | 56 |
| 14.4 | Effect of Failure of Conditions | 57 |
| 14.5 | Waiver of Conditions to Confirmation and Effective Date | 57 |

**Article XV RETENTION OF JURISDICTION** ..............................................................57

**Article XVI MISCELLANEOUS PROVISIONS** ...........................................................58

| 16.1 | Injunctions or Stays | 58 |
| 16.2 | Amendments | 59 |
| 16.3 | Severability | 59 |
| 16.4 | Notices | 59 |
| 16.5 | Creditor Noticing | 59 |
| 16.6 | Governing Law | 59 |
| 16.7 | Controlling Interpretation | 60 |

iv

16.8    Plan Supplement; Exhibits and Schedules ...............................................60

16.9    No Admissions ...........................................................................................60

16.10   Binding Effect; Successors and Assigns ...................................................60

16.11   Immediate Effectiveness ...........................................................................60

16.12   Final Decree ...............................................................................................60

1050585l.11

**DISCLAIMER**

THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN CONTAINS CERTAIN STATUTORY PROVISIONS AND DESCRIBES CERTAIN EVENTS IN THESE CHAPTER 11 CASES AND CERTAIN DOCUMENTS RELATED TO THIS COMBINED DISCLOSURE STATEMENT AND PLAN THAT MAY BE ATTACHED AND ARE INCORPORATED BY REFERENCE. ALTHOUGH THE DEBTORS BELIEVE THAT THIS INFORMATION IS FAIR AND ACCURATE, THIS INFORMATION IS QUALIFIED IN ITS ENTIRETY TO THE EXTENT THAT IT DOES NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.

THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS MADE ONLY AS OF THE DATE OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN, UNLESS ANOTHER TIME IS SPECIFIED. THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED IN GOOD FAITH TO BE ACCURATE OR THE BEST AVAILABLE INFORMATION. THERE CAN BE NO ASSURANCES THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THIS DATE.

NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTORS' BUSINESS. EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN AND IN THE RELATED EXHIBITS HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES IN THE UNITED STATES OR ANY OTHER JURISDICTION.

THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTIONS 1123 AND 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016 AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON- BANKRUPTCY LAWS. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), ANY STATE SECURITIES COMMISSION OR ANY SECURITIES EXCHANGE OR ASSOCIATION, NOR HAS THE SEC, ANY STATE SECURITIES COMMISSION OR ANY SECURITIES EXCHANGE OR ASSOCIATION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. NO OTHER GOVERNMENTAL OR OTHER REGULATORY AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE

DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THEREFORE, EACH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

10505851.11

# ARTICLE I

## INTRODUCTION

The Debtors file this *First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* (as amended from time to time, the "**Combined Disclosure Statement and Plan**" or the "**Plan**"). The Plan is both a disclosure statement and a plan within the meaning of such terms under the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

The Debtors, in consultation with the Committee,  are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. As set forth below, the Plan provides a comprehensive reorganization strategy designed to maximize value for all stakeholders and ensure the Debtors' long-term viability. Rather than effecting a piecemeal disposition of assets, the Plan contemplates a balance-sheet restructuring pursuant to which (i) all valid and Allowed Claims will be satisfied in accordance with the treatment set forth herein, (ii) the Debtors' secured obligations will be equitized or refinanced through the issuance of New Common Equity, and (iii) the Debtors will emerge from chapter 11 as fully capitalized, going-concern enterprises positioned for renewed growth. The Plan also contains, among other things, a discussion of the Debtors' history, businesses, properties, operations, material events leading to the commencement of these Chapter 11 Cases, and risk factors, a summary and analysis of the Plan, an analysis of the projected recoveries under the Plan, and certain other related matters.

The Debtors and the Committee believe that the Plan complies with all applicable requirements and is the best available alternative for Creditors. **The Debtors and Committee therefore recommend that all eligible Creditors vote to ACCEPT the Plan.**

**ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ARE ENCOURAGED TO READ THE PLAN IN ITS ENTIRETY AND TO CONSULT WITH AN ATTORNEY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

# ARTICLE II

## DEFINITIONS AND CONSTRUCTION OF TERMS

### 2.1    Definitions

1.    "Administrative Claim" means, for purposes of the Plan, a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) any superpriority Claim granted pursuant to the DIP Order; and (c) Allowed Professional Fee Claims.

1

2.     "Administrative Claims Bar Date" means, for purposes of the Plan, the first Business Day that is 21 days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

3.     "Administrative Claims Objection Deadline" means the first Business Day that is 21 days following the Administrative Claims Bar Date, except as specifically set forth in the Plan or a Final Order.

4.     "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity was a debtor in a case under the Bankruptcy Code.

5.     "Allowed" means with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed (where such Proof of Claim is required to be filed), is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. For the avoidance of doubt: (x) a Proof of Claim Filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

6.     "Assumed Executory Contract and Unexpired Lease List" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases (with proposed cure amounts) that will be assumed by the Reorganized Debtors, which list shall be included in the Plan Supplement.

7.     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

8. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

9. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

10. "Bar Date" means, as applicable, the Administrative Claims Bar Date, the Claims Bar Date, the Governmental Bar Date, and any other date or dates established or to be established by an order of the Court by which Proofs of Claim must be Filed.

11. "Bar Date Order" means the Order (I) Establishing Deadlines for Filing Proofs of Claim, Including Claims for Payment Under Section 503(b)(9) of the Bankruptcy Code and Rejection Damages, (II) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief [D.I. 168].

12. "BLH Acquisition" means Debtor BLH Acquisition Co., LLC.

13. "BLH HoldCo" means Debtor BLH HoldCo LLC.

14. "BLH TopCo" means Debtor BLH TopCo LLC.

15. "Business Day" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

16. "Cash" or "$" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

17. "Causes of Action" means any and all claims, demands, rights, actions, suits, or proceedings, whether known or unknown, contingent or non-contingent, that the Debtors or their Estates may have or assert, including, without limitation, claims arising under chapter 5 of the Bankruptcy Code, contract claims, tort claims, and any other rights to recover damages or property. For the avoidance of doubt, Causes of Action do *not* include routine defenses to Claims asserted against the Debtors unless such defenses are the subject of a pending or potential affirmative action.

18. "Chapter 11 Cases" means the procedurally consolidated cases filed or to be filed (as applicable) for the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

19. "Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors, whether or not assessed or Allowed.

20.     "Claims Agent" means Stretto, the notice and claims agent that the Debtors have retained for the Chapter 11 Cases.

21.     "Claims Bar Date" means, as to all Debtors, July 7, 2025,  at 11:59 p.m. (ET) as established by the Bankruptcy Court.

22.     "Claims Register" means the official register of Claims against and Interests in the Debtors maintained by the Claims Agent.

23.     "Class" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

24.     "Class 4A Recovery Pool" means an aggregate amount of Cash used to fund the Class 4A Recovery Pool Account, to be distributed in accordance with the terms and conditions of the Plan, which shall consist of: (i) $25,000.00; (ii) 45% of Liquor License Sale Proceeds; and (iii) 100% of Preference Recoveries.  For the avoidance of doubt, (a) the Class 4A Recovery Pool shall consist only of the foregoing (i), (ii), and (iii) and shall not include any other property, proceeds, rights, or Causes of Action not expressly stated in this definition of Class 4A Recovery Pool or the proceeds from any other asset sales, liquidations, or dispositions—including, without limitation, sales of equipment, leases and option rights, or inventory; and (b) the Committee shall not, and shall not be authorized to, pursue, support, or otherwise participate in any challenge, objection, or other action contesting the validity, priority, extent, or enforceability of the Secured Lenders' claims or liens.

25.     "Class 4A Recovery Pool Account" means a segregated account created and used exclusively to provide distributions to Holders of Allowed General Unsecured Claims, such account to be funded on or after the Effective Date, as appropriate, in an amount equal to the Class 4A Recovery Pool.  For the avoidance of doubt, the Class 4A Recovery Pool Account shall not be subject to any Lien or encumbrance.

26.     "Class 4B Recovery Pool" means Cash, in the amount of $25,000.00, which will fund the Class 4B Recovery Pool Account and be distributed in accordance with the terms and conditions of the Plan.

27.     "Class 4B Recovery Pool Account" means a segregated account created and used exclusively to provide distributions, collectively, to each Holder of an Allowed General Unsecured Claim who affirmatively "opts in" on its ballot to be a Releasing Party, such account to be funded on the Effective Date in an amount equal to the Class 4B Recovery Pool.  For the avoidance of doubt, the Class 4B Recovery Pool Account shall not be subject to any Lien or encumbrance.

28.     "Committee" means the Official Committee of Unsecured Creditors.

29.     "Company" means the BLH TopCo.

30.     "Confirmation" means entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

31.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

32.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Bankruptcy Court will consider confirmation of the Plan.

33.     "Confirmation Objection Deadline" means the date that is at least five (5) Business Days prior to the date first set by the Bankruptcy Court for the Confirmation Hearing.

34.     "Confirmation Order" means, collectively, any orders of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code and approving the Disclosure Statement as having adequate information pursuant to sections 1125 and 1126 of the Bankruptcy Code.

35.     "Consenting Interest Holder" means Bar Louie Restaurant Group, LLC, a Texas limited liability company.

36.     "Consummation" means the occurrence of the Effective Date.

37.     "Cure Claim" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

38.     "D&O Liability Insurance Policies" means all insurance policies (including any "tail policy") maintained by the Debtors as of the Petition Date for liabilities against any of the Debtors' current or former directors, managers, and officers.

39.     "Debtor Release" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article VIII.D of the Plan.

40.     "Debtor" means any of TopCo, HoldCo, BLH Acquisition, Franchises, or White Marsh.

41.     "Debtors" means all or any combination of TopCo, HoldCo, BLH Acquisition, Franchises, or White Marsh.

42.     "DIP Claims" means all Claims of the DIP Lender arising under, derived from, secured by, or based on the DIP Facility, the DIP Documents, or the DIP Order, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising under or related to the DIP Facility. For the avoidance of doubt, the Debtors' obligations under the DIP Facility or otherwise under any of the DIP Documents, and the security interests granted thereunder or pursuant thereto are valid, enforceable, and properly perfected first-priority security interests in and continuing liens upon the assets stated therein and in all related agreements, instruments, documents and documentation and are not subject to any offset, deduction, claim, counterclaim, or defense of any kind, nature, or description whatsoever.

5

43.     "DIP Documents" means, collectively, the DIP Term Sheet, the DIP Order, and all other agreements, documents, and instruments related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements, as may be amended, modified, restated, or supplemented from time to time.

44.     "DIP Facility" means the debtor-in-possession term loan facility provided for under the DIP Documents.

45.     "DIP Lender" means Bar Louie, LLC or affiliates thereof, each solely in their capacity as such, and all successors and assigns of Bar Louie, LLC.

46.     "DIP Lender/Prepetition Lender Equity Distribution" means, the transfer of New Common Equity in exchange for (a) the Prepetition Credit Agreement Secured Claims and (b) the DIP Claims.

47.     "DIP Order" means, collectively, the interim and final orders entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Facility and incur postpetition obligations thereunder, as such orders may be amended, supplemented, or modified from time to time.

48.     "DIP Term Sheet" means that certain term sheet providing the terms of the DIP Facility, by and among the Debtors and the DIP Lender, as may be amended, modified, restated, or supplemented from time to time.

49.     "Disputed" means, with respect to any Claim or Interest, any Claim or Interest, or any portion thereof, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Proof of Interest or a motion for payment has been timely Filed with the Bankruptcy Court, to the extent the Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; provided, however, that in no event shall a Claim that is deemed Allowed pursuant to this Plan be a Disputed Claim.

50.     "Distribution Agent" means, as applicable, the Reorganized Debtors or any Entity the Reorganized Debtors select in their sole and absolute discretion to make or to facilitate distributions in accordance with the Plan.

51.     "Distribution Record Date" means the date for determining which Holders of Allowed Claims and Interests are eligible to receive distributions pursuant to the Plan, which date shall be the Effective Date.

52.     "Effective Date" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in the Plan have been satisfied or waived in accordance with the Plan, which is anticipated to be no later than August 7, 2025.

53. "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

54. "Estate" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

55. "Exculpated Party" means, collectively, and in each case in its capacity as such: (a) each of the Debtors and their current managers and officers; (b) any statutory committees appointed in the Chapter 11 Cases; (c) all members of any statutory committee who are members of any such statutory committee as of the Effective Date, each in their capacity as such, except as otherwise expressly set forth herein; and (d) with respect to each of the foregoing in clauses (a) and (b) each such Entities' professionals employed in connection with the Chapter 11 Cases.

56. "Executory Contract" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

57. "File" or "Filed" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or Proof of Interest, the Claims Agent.

58. "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

59. "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

60. "Franchises" means Debtor BLH Franchises Restaurants LLC.

61. "General Unsecured Claim" means any Unsecured Claim (including, for the avoidance of doubt, Lender's Deficiency Claim) that is not an Administrative Claim, a Secured Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, an Intercompany Claim, or a Claim that is paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court (and, for the avoidance of doubt, any Claim paid in full prior to the Effective Date shall not be entitled to a distribution as a General Unsecured Claim under the Plan).

62. "Governmental Bar Date" means, as to all Debtors, September 22, 2025, at 11:59 p.m. (ET), or such later date as may be set by order of the Court.

63. "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

64. "Holder" means an Entity holding a Claim or an Interest, as applicable, or an Entity receiving or retaining Interests in TopCo, or the New Common Equity, as applicable.

65. "Impaired" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

66. "Indemnification Provisions" means each of the Debtors' indemnification provisions in place immediately prior to the Effective Date whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, or contracts for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents and such current and former directors, officers, and managers' respective Affiliates.

67. "Intercompany Claim" means any Claim held by a Debtor or an Affiliate of a Debtor against another Debtor.

68. "Intercompany Interest" means an Interest in any Debtor, or a direct subsidiary of any Debtor, other than an Interest in TopCo. Information concerning the Debtors' corporate ownership structure is set forth in Section 3.2 below and shown on the Corporate Organizational Court attached hereto as Exhibit A.

69. "Interest" means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

70. "Lender" means Bar Louie, LLC, in its capacity as either the Prepetition Lender or DIP Lender, and all successors and assigns of Bar Louie, LLC.

71. "Lender's Deficiency Claim" means the Unsecured deficiency Claim arising under the Prepetition Credit Facility, the DIP Facility, and the DIP Order, which is hereby deemed an Allowed General Unsecured Claim in the amount of $3 million against each Debtor and shall participate *pari passu* with other Allowed General Unsecured Claims in the Class 4A Recovery Pool with respect to the Cash and Preference Recoveries but which shall not share in Liquor License Proceeds.

72. "Lender's Secured Claims" means the DIP Claims and the Prepetition Credit Agreement Claim.

8

73.     "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

74.     "Liquidating Analysis" means an analysis of recoveries and costs under the Plan and a hypothetical liquidation under chapter 7 of the Bankruptcy Code.

75.     "Liquor License Sale Proceeds" means the actual gross proceeds received by the Debtors or Reorganized Debtors from the direct sale of "shelved" liquor licenses for store locations closed on or before the Effective Date, including the following former locations (with corresponding store numbers): Lakewood [01706], Bolingbrook [00769], Dearborn [00407], Westlake [01204], Dallas [01416], Nashville (Bellevue) [01804], Auburn Hills [17909], East Brunswick [01603], Lyndhurst [00587], Denver [00750], Livonia [00770], Novi [17905], Hampton [01206], Chesterfield [01402], Myrtle Beach [23942], and Kirkwood [00589], whether received on or before the Effective Date or after the Effective Date, and received through any form of direct sale of the liquor license, including a sale pursuant to de minimis asset sale procedures. For the avoidance of doubt, "Liquor License Sale Proceeds" shall not include proceeds from transactions in which the Debtors or Reorganized Debtors grant a third party the right to designate or control the transferee of a liquor license, unless and until the liquor license is actually sold and proceeds are received from such sale.

76.     "New Common Equity" means the common stock, limited liability company membership units, or functional equivalent thereof of TopCo, as a Reorganized Debtor, to be issued on the Effective Date.

77.     "New Organizational Documents" means the documents providing for corporate organization and governance of the Reorganized Debtors, including charters, bylaws, operating agreements or such other applicable organizational documents, which shall be included in the Plan Supplement.

78.     "Other Priority Claim" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

79.     "Other Secured Claim" means any Secured Claim, other than a DIP Claim or a Prepetition Credit Agreement Secured Claim and includes, but is not limited to, any Secured Claims asserted by any or all of the Texas Taxing Authorities.

80.     "Oversight Agent" means an attorney or other professional advisor, to be identified in the Plan Supplement, selected by the Debtors, DIP Lender, and the Committee, who shall monitor and receive reports regarding the Reorganized Debtors' liquidations of shelved liquor licenses and prosecution of Preference Causes of Action. The Oversight Agent shall not have authority to direct, control, or otherwise manage such liquidations or prosecutions, which shall be conducted by the Reorganized Debtors in the exercise of their business judgment, except as otherwise set forth in Section 6.3.

81.     "Petition Date" means March 26, 2025, the date on which each of the Debtors commenced the Chapter 11 Cases.

82.     "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be filed by the Debtors seven days before the deadline established to object to this Plan, as the same may be amended, supplemented, altered, or modified from time to time on the terms set forth herein, and which includes:  (a) the New Organizational Documents; (b) the schedule of retained Causes of Action, if any; (c) any other necessary documentation related to the Restructuring Transactions.

83.     "Preference Cause of Action" means any Cause of Action arising under chapter 5 of the Bankruptcy Code, other than any Released Preference Cause of Action, and excluding any Cause of Action that has been released or rendered moot as a result of the assumption of an executory contract or unexpired lease by the Debtors. This includes any such Causes of Action that the Debtors or their Estates may have ever had, now have or which the Debtors or their Estates hereafter can, shall or may have against any Entity, whether known or unknown, foreseen or unforeseen.

84.     "Preference Recoveries" means the net proceeds of recoveries actually received from the prosecution of Preference Causes of Action, if any.

85.     "Prepetition Administrative Agent" means Bar Louie, LLC, solely in its capacity as successor administrative agent and collateral agent under the Prepetition Credit Agreement.

86.     "Prepetition Credit Agreement" the *Credit Agreement*, dated as of May 27, 2020, as amended, supplemented, or modified from time to time.

87.     "Prepetition Credit Agreement Claim" means all Claims arising under, derived from, or based upon the Prepetition Credit Facility.

88.     "Prepetition Credit Agreement Secured Claim" means any Secured Claim arising under the Prepetition Credit Facility.  For the avoidance of doubt, the Debtors' obligations under the Prepetition Credit Agreement and the security interests granted thereunder or pursuant thereto are valid, enforceable, and properly perfected first-priority security interests in and continuing liens upon the assets stated therein and in all related agreements, instruments, documents and documentation and are not subject to any offset, deduction, claim, counterclaim, or defense of any kind, nature, or description whatsoever.

89.     "Prepetition Lender" means Bar Louie, LLC, solely in its capacity as such, and all successors and assigns of Bar Louie, LLC.

90.     "Prepetition Credit Facility" means the Prepetition Credit Agreement.

91.     "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

92.     "Pro Rata" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

93.     "Professional" means an Entity retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

94.     "Professional Fee Claims" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) incurred by a Professional in the Chapter 11 Cases on or after the Petition Date and through and including the Effective Date that the Bankruptcy Court has not denied by Final Order.  To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

95.     "Professional Fee Reserve" means the reserve account previously established for Allowed Professional Fee Claims pursuant to the DIP Order.

96.     "Proof of Claim" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

97.     "Proof of Interest" means a proof of Interest Filed in any of the Debtors in the Chapter 11 Cases.

98.     "Released Preference Cause of Action" means any Preference Cause of Action stated in the Schedule of Released Preference Causes of Action or released pursuant to the Plan.

99.     "Reinstate," "Reinstated," or "Reinstatement" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

100.    "Rejected Executory Contract and Unexpired Lease List" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Reorganized Debtors pursuant to the Plan, which list shall be included in the Plan Supplement.

101.    "Released Party" means collectively,

(a) each of the Debtors;

(b) the Reorganized Debtors;

(c) the Consenting Interest Holder;

(d) the Sole Member;

(e) the Prepetition Lender;

(f) the Prepetition Administrative Agent;

(g) the DIP Lender;

(h) the Lender;

(i) with respect to each of the foregoing in (a) through (h), where any is an investment manager, advisor, or sub-advisor for a beneficial holder, such beneficial holder; and

(j) with respect to each of the foregoing in (a) through (i), such Entity's current and former Affiliates, and such Affiliates' current and former directors, managers, officers, equity holders, predecessors, successors, assigns, subsidiaries, affiliated investment funds, managed accounts, investment managers, advisors, sub-advisors, participants, and each of their respective current and former equity holders, officers, directors, managers, principals, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

102.    "Releasing Parties" means, collectively, and in each case in its capacity as such:

(a)    each of the Released Parties, each in its capacity as such, and each such Released Party's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, affiliated investment funds or investment vehicles, managed accounts or funds, investment managers, advisors, and sub-advisors with discretionary authority, participants, and each of their respective current and former equity holders, officers, directors, managers, principals, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively; and

(b)    each Holder of Claims that affirmatively elects on its ballot to opt in to be a "Releasing Party" and, therefore, grant the "Releases by Releasing Parties" set forth  in the Plan.

103.    "Reorganized Debtor" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

104.    "Restructuring Transactions" means the transactions described in Article III of the Plan.

105.    "Schedule of Released Preference Causes of Action" means a list of Released Preference Causes of Action stated by the Debtors, in consultation with the Committee and included in the Plan Supplement.

106. "Schedules" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, if any, as such schedules may be amended, modified, or supplemented from time to time.

107. "SEC" means the Securities and Exchange Commission.

108. "Secured Claim" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

109. "Secured Lender" means Bar Louie, LLC in its capacity as the DIP Lender, the Prepetiton Lender, or both, as the context requires, and all successors and assigns of Bar Louie, LLC.

110. "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

111. "Security" has the meaning set forth in section 2(a)(1) of the Securities Act.

112. "Sole Member" means Leslie Crook, as the sole member of the Consenting Interest Holder.

113. "Statutory Fees" means applicable fees payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code, to the extent applicable.

114. "Texas Taxing Authorities" means any or all of the following *ad valorem* taxing authorities in the State of Texas:  City of Allen, Allen Independent School District, Bexar County, Dallas County, Fort Bend County, Irving Independent School District, Montgomery County, Tarrant County, Dallas County Utility and Reclamation District, Fort Bend Independent School District, Fort Bend County Levee Improvement District #2, Willow Fork Drainage District and Williamson County, certain of which have filed proofs of claim as follows:  (i) Allen Independent School District, Claim No. 2 in the amount of $2,843.37; (ii) City of Allen, Claim No. 3 in the amount of $1,054.45; (iii) Irving ISD, Claim No. 4 in the amount of $4,054.14; (iv) Tarrant County, Claim No. 5 in the amount of $6,724.42; (v) Dallas County, Claim No. 6 in the amount of $12,024.40; (vi) Fort Bend Independent School District, Claim No. 15 in the amount of $5,095.14; (vii) Fort Bend County Levee Improvement District #2, Claim No. 16 in the amount of $489.66; (viii) Willow Fork Drainage District, Claim No. 17 in the amount of $1,752.77; (ix) Dallas County Utility and Reclamation District, Claim No. 27 in the amount of $3,072.07; (x) Williamson County, Claim No. 28 in the amount of $475.48; (xi) Fort Bend County, Claim No. 33 in the amount of $3,054.58; and (xii) Montgomery County, Claim No. 34 in the amount of $5,002.26.

115.    "Third-Party Release" means the release given by each of the Releasing Parties to the Released Parties as set forth in Article XI.2. of the Plan, as applicable.

116.    "Unexpired Lease" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

117.    "Unimpaired" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

118.    "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

119.    "Voting Deadline" means the deadline to submit votes to accept or reject the Plan.

120.    "White Marsh" means Debtor BLH White Marsh LLC.

## 2.2    Rules of Interpretation

For purposes of the Plan, except as otherwise provided herein:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (iv) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (v) any effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner as is consistent with the overall purpose and intent of the Plan, all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (viii) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (ix) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (x) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (xi) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xii) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (xiii) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

### 2.3 Computation of Time

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### 2.4 Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

### 2.5 Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein.

### 2.6 Reference to the Debtors or the Reorganized Debtors

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

### 2.7 Controlling Document

In the event of an inconsistency between the Plan and any related document, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the Plan Supplement shall control. In the event of any inconsistency between the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE III

## BACKGROUND

### 3.1 Overview

Bar Louie is an upscale neighborhood bar and eatery known for a relaxed atmosphere, handcrafted cocktails, a well-curated selection of local and regional beers, high-quality wines, and a robust menu. The Bar Louie concept centers on locally themed bars that cater to the specific demographics within each neighborhood location. Founded in 1991 in Chicago, Illinois, the Debtors now operate 28 locations, franchise another 17 locations. Bar Louie restaurants are

located in a variety of locations, including lifestyle centers, traditional shopping malls, event locations, central business districts, and other stand-alone specialty sites. The Debtors acquired the Bar Louie business in May 2020 through a section 363 sale process in a prior bankruptcy proceeding.

## 3.2     Corporate and Capital Structure

As shown on the Corporate Organizational Chart attached as **Exhibit A**, TopCo owns 100% of the membership interests of HoldCo, which, in turn, owns 100% of the membership interests of BLH Acquisition, which in turn owns 100% of the membership interests of (both) Franchises and White Marsh.  TopCo, HoldCo, BLH Acquisition, and Franchises are all Delaware limited liability companies.  White Marsh is a Maryland limited liability company.  Non-Debtor Bar Louie Restaurant Group LLC owns 100% of the membership interests of TopCo.

BLH Acquisition, HoldCo, and Franchises are obligors under the Prepetition Credit Agreement with the Prepetition Lender, as successor administrative agent and successor lender. As of the Petition Date, BLH Acquisition, HoldCo, and Franchises were indebted under the Prepetition Credit Agreement in the amount of not less than $69,573,827.88**,** plus additional fees, expenses, and other amounts arising under the Prepetition Credit Agreement.

The obligations of BLH Acquisition, HoldCo, and Franchises under the Prepetition Credit Agreement are secured by senior security interests in and liens on substantially all of their assets, which, in turn, constitute substantially all of the Debtors' assets.

The Lender acquired its agent and lender positions under the Prepetition Credit Agreement from the prior holders on or about February 18, 2025.

## 3.3     Challenges Before the Petition Date

Despite strong progress since the cessation of COVID-related restrictions, the Debtors have continued to struggle in the face of various financial and operational challenges, including a number of underperforming locations, increased costs of operation, and mounting macroeconomic pressures that have placed negative pressure on the Company's margins and cash flow. Inflationary pressures have caused consumers, generally, to cut back on dining out. At the same time, menu prices have risen to keep pace with increased food, utility, and labor costs. As a result, many of the Debtors' restaurants have underperformed, causing a drag on the Debtors' financial performance and management attention. Among other metrics evidencing the Debtors' financial challenges, bar-level EBITDA for November 2024 was 38.8% less than the same period in 2023. As of December 1, 2024, year-to-date EBITDA was approximately 9% less than the same period in 2023.

## 3.4     Prepetition Marketing Efforts

From June 2024 through February 2025, the Debtors employed Kroll Securities to lead a marketing process to procure a sale of all or certain parts of their businesses. The process was unsuccessful. Throughout their diligent marketing efforts, the Debtors worked to address their

business challenges to restore operating margins. Over the past two years, such efforts have included price changes, promotions based on data-driven marketing and customer analysis, creative measures to lower the cost of goods sold, and an analysis of underperforming locations.

### 3.5    The Chapter 11 Cases

After their unsuccessful prepetition marketing process and substantial prepetition operational restructuring efforts, the Debtors commenced these Chapter 11 Cases to effect a comprehensive reorganization to be implemented through a chapter 11 plan that will result in a substantial deleveraging of the Debtors' balance sheet. The Debtors believe that the contemplated reorganization will deliver a value-maximizing result for their estates, creditors, and other stakeholders.

(a)    Bar Dates

**The Bar Date Order established the following deadlines for filing Claims against the Debtors' estates:**

**(i) July 7, 2025 at 11:59 p.m. (ET) as the general deadline for Creditors to File any Proofs of Claim against the Debtors,**

**(ii) September 22, 2025 at 11:59 p.m. (ET) as the Government Bar Date, and**

**(iii) July 7, 2025 at 11:59 p.m. (ET) as the deadline to file, *with the Court*, Administrative Claims arising on or before May 23, 2025. The Bar Date Order established certain procedures and requirements for Proofs of Claim. (*As used in the Bar Date Order*,** "Administrative Claim" means a claim pursuant to sections 503(b) and/or 507(a)(2) of the Bankruptcy Code, excluding claims for (a) fees and expenses of professionals retained in these Cases, (b) claims for payment pursuant to section 503(b)(9) of the Bankruptcy Code,  and (c) claims arising from post-petition goods and services provided to the Debtors in the ordinary course of business**.)**

(b)    Postpetition Financing

Without post-petition financing, the Debtors would have lacked the cash to implement their contemplated reorganization through these Chapter 11 Cases and to ensure sufficient working capital to operate their businesses, preserve and maximize the value of their estates, administer their estates, and confirm and implement this Plan. The Debtors' liquidity needs include payments to employees, third-party vendors, landlords, utilities, taxing authorities, and insurance companies, among others, who provide the essential services needed to operate, maintain, and insure the Debtors' assets.

Before commencing these Chapter 11 Cases, the Debtors solicited third-party lenders for post-petition financing to assess the availability of such financing and confirm appropriate terms for the Debtors to continue to operate and administer these Chapter 11 Cases. Having analyzed the terms of funding from various parties, the Debtors determined that obtaining postpetition financing from the DIP Lender was the only reasonable option available. Accordingly, the Debtors

sought the Court's permission to enter into a debtor-in-possession financing facility, consisting of a $1,350,000 New Money DIP Loan and a $1,275,000 Roll Up DIP Loan with consensual use of cash collateral, by motion filed on March 26, 2025 [D.I. 7].  On March 28, 2025, the Bankruptcy Court approved the DIP Facility on an interim basis and scheduled a final hearing for April 24, 2025 [D.I. 35].

On April 11, 2025, the United States Trustee filed the *Notice of Appointment of Creditors Committee* [D.I. 66], appointing the Committee.  The Debtors, DIP Lender and the Committee engaged in extensive, good-faith negotiations with the Committee and certain other parties regarding the terms of the DIP Facility, the use of cash collateral, and the structure of the Debtors' postpetition financing. As a result of these negotiations, the Final DIP Order and the accompanying budget reflect a number of material changes and enhancements from the Interim DIP Order.

The Bankruptcy Court approved the DIP Facility on a final basis and entered the DIP Order reflecting the agreements outlined above on April 24, 2025 [D.I. 129].  The DIP Order commits the Debtors to a tight timeline toward an effective date of a confirmed chapter 11 plan.

(c)    The Plan.

The Plan contemplates a comprehensive reorganization, to be implemented through the Plan, that will result in a substantial deleveraging of the Debtors' balance sheet.  Under the Plan, the DIP Lender will convert approximately $69,198,828 of its secured debt under the Prepetition Credit Agreement and the DIP Facility into 100% of the new equity interests in the reorganized Debtors.

(d)    Available Assets

On April 23, 2025, the Debtors filed Schedules and Statements describing their assets and known Claims as of the Petition Date [D.I. 105-114]. The Schedules and Statements reflect the Debtors' prepetition practice of operating on a generally consolidated basis among the Bar Louie entities, with most assets and liabilities at the applicable parent companies. In general, the Debtors' assets as of the Petition Date consisted of cash, accounts receivable, intellectual property, other intangible rights or assets, and Causes of Action.

The Debtors continue to operate and are funded by revenues from continued operations and the DIP Facility. The Debtors believe that these assets are sufficient to fund the Plan process and achieve confirmation.

## 3.6    **The Committee**

On April 15, 2025, counsel for the Committee entered their notice of appearance [D.I. 71]. On April 21, 2025, the Committee filed its *Omnibus Objection and Reservation of Rights of the Official Committee of Unsecured Creditors to Debtors' First Day Motions* [D.I. 88], which was resolved as discussed above through modifications to the Final DIP Order. On May 1, 2025, the Committee filed applications to employ Womble Bond Dickinson (US) LLP and Schwartz Law, PLLC as its bankruptcy counsel [D.I. 138 & 138].

**3.7**     **Additional Documents and Information**

Copies of all documents filed in the Chapter 11 Cases, including but not limited to the DIP Order and Sale Orders, can be viewed and downloaded free of charge at https://cases.stretto.com/BarLouie.

ARTICLE IV

**IMPORTANT DATES**

The following table sets forth certain key dates relating to the Plan, solicitation of votes, and the confirmation process. Additional information concerning the process for voting on and confirmation of the Plan is set forth below. Creditors are urged to review the accompanying *Debtors' Motion for Entry of Order (I) Conditionally Approving the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Approving Solicitation and Voting Procedures; (III) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing and Setting Related Dates and Deadlines; (IV) Approving the Forms of Ballots, Solicitation Packages, and Notices in Connection Therewith; and (V) Granting Related Relief*, and to consult their attorney with any questions.

| Milestone | Dates (proposed) |
|---|---|
| Voting Record Date | June 13, 2025 |
| Deadline to Object to Claims for Voting Purposes Only | June 30, 2025 |
| Deadline for Creditors to File Rule 3018 Motions | July 7, 2025 |
| Deadline to File Plan Supplement | July 7, 2025 |
| Voting Deadline | July 14, 2025 |
| Deadline to Object to Final Approval of the Disclosure Statement or Plan Confirmation | July 18, 2025 |
| Deadline to Respond to a Rule 3018 Motion | July 18, 2025 |
| Deadline for Briefing in Support of Final Approval of the Disclosure Statement or Plan Confirmation | July 21, 2025 |
| Deadline to File Voting Tabulation Affidavit | July 21, 2025, at 4:00 p.m. (ET) |
| Confirmation Hearing | July 24, 2025, at 10:00 a.m. (ET) |

**Creditors with questions or seeking further information about the voting procedures for their Claims or about the solicitation packages may contact the Balloting Agent by email at BarLouieInquiries@Stretto.com by telephone at (833) 682-8977 (U.S./Canada, toll-free)**

or **(949) 800-5913** (International), or by mail at **BLH TopCo LLC Claims Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602**.

## ARTICLE V

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in the Plan.

### 5.1    Administrative Claims

Unless otherwise agreed to by a Holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except as otherwise provided by a Final Order entered by the Bankruptcy Court (including the Bar Date Order) or as provided by this Article V, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their Estates, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by the Administrative Claims Objection Deadline.

### 5.2    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim

shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

### 5.3   Professional Claims

Notwithstanding anything to the contrary herein:

(a)   All final applications for payment of Professional Claims for services performed and expenses incurred prior to the Effective Date shall be Filed no later than the Administrative Claims Bar Date and shall comply with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and applicable Orders of the Bankruptcy Court.

(b)   Any objections to such Professional Claims shall be Filed no later than 21 days after the Administrative Claims Bar Date.  Subject to the availability of the Bankruptcy Court, a hearing to determine the allowance of such final fee applications shall be held within 30 days after the Administrative Claims Bar Date, and the Debtors shall File a notice of such hearing.

(c)   Allowed Professional Claims shall be satisfied as follows: (i) *first*, from any retainer held by such Professional; (ii) *second,* from the funds in the Professional Fee Reserve allocable to such Professional   (iii) *third,* to the extent not paid pursuant to (i) or (ii), from other assets of the Estates in accordance with the Bankruptcy Code and Bankruptcy Rules, and subject in all respects to the DIP Lender's liens and superpriority claims, except to the extent of the Carve Out.

(d)   The Professional Fee Reserve shall be maintained in a trust account of counsel for the Debtors, Raines Feldman Littrell LLP. Such account and the funds therein shall not be considered property of the Estates, but shall continue to be held for the benefit of Professionals on a line-item basis in accordance with the DIP Order (as reduced for any amounts paid to such Professional pursuant to any prior order).  In the event of any balance remaining in the Professional Fee Reserve after all Allowed Professional Claims have been paid in full, such balance shall be paid to the Lender on account of the Bar Louie Claims.

### 5.4   <u>Statutory Fees</u>

(a)   All Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, and notwithstanding any consolidation pursuant to the Plan, the Debtors shall be liable to pay any and all Statutory Fees when due and payable until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

(b)   The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, and notwithstanding any consolidation pursuant to the Plan, each post-Effective Date Debtor shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.

ARTICLE VI

**CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**

**6.1**     **Classification of Claims and Interests**

This Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in Article V of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below.  The classification of Claims and Interests set forth herein shall apply separately to each of the Debtors (except for Class 7 Interests in TopCo, which shall only apply to TopCo).  All of the potential Classes for the Debtors are set forth herein.  Voting tabulations for recording acceptances or rejections of the Plan shall be conducted on a Debtor-by-Debtor basis as set forth above.

The estimated amount of Allowed Claims and projected recoveries in the table below are provided for illustrative purposes only and are subject to material change based on certain contingencies, including the claims reconciliation process and any litigation outcomes. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect good faith estimates or assumptions by the Debtors as of the date hereof only. In addition to the cautionary notes contained elsewhere in the Plan, the Debtors emphasize that they make no representation as to the accuracy of these recovery estimates or assumptions. The Debtors expressly disclaim any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received or errors discovered). Actual recoveries may vary widely from the projections in the table below.

| Class | Claim or Interest | Status | Voting Rights | Estimated Amount of Allowed Claims | Projected Recovery[2] |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $0 | 100% |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $0 | 100% |
| 3 | Prepetition Credit Agreement Secured Claims | Impaired | Entitled to Vote | $69,573,827.88 | 0.0% |
| 4 | General Unsecured Claims<br><br>**Class 4A:** General Unsecured Claims<br><br>**Class 4B:** General Unsecured Claims of Releasing Creditors | Impaired | Entitled to Vote | $8,756,971.35 | TBD |
| 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) | [ ] | 0.0% - Unknown |
| 6 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) | [ ] | 0.0% - Unknown |
| 7 | Interests in TopCo | Impaired | Not Entitled to Vote (Deemed to Reject) | $0 | 0% |

## 6.2    Treatment of Classes of Claims and Interests

To the extent a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the classification of Allowed Claims and Allowed Interests is specified below.

---

[2]    Recoveries are projected as of May 23, 2025, without adjustment for duplicate claims (*i.e.*, filed claims that supersede scheduled claims) or disputed claims.  Estimated recoveries will be updated in the Plan Supplement, after expiration of the General Bar Date.

10505851.11

      (a)    <u>Class 1 — Other Priority Claims</u>

          (i)    *Classification*: Class 1 consists of any Other Priority Claims.

          (ii)    *Treatment*: On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Other Priority Claim, each Holder thereof shall receive, at the option of the applicable Debtor(s), either: payment in full in Cash of the unpaid portion of its Allowed Other Priority Claim; or such other treatment as may be agreed to by such Holder and the Debtors.

          (iii)    *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

      (b)    <u>Class 2 — Other Secured Claims</u>

          (i)    *Classification*: Class 2 consists of any Other Secured Claims.

          (ii)    *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed Other Secured Claim, each Holder thereof shall receive, at the option of the applicable Debtor(s), either: Cash equal to the full Allowed amount of its Other Secured Claim on the later of (x) the Effective Date and (y) the date payment on account of such Other Secured Claim is due; Reinstatement of such Holder's Allowed Other Secured Claim; the return or abandonment of the collateral securing such Allowed Other Secured Claim to such Holder, or such other treatment as may be agreed to by such Holder and the Debtors.

          (iii)    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

      (c)    Class 3 — Lender's Secured Claims

          (i)    *Classification*: Class 3 consists of any Prepetition Credit Agreement Secured Claims and DIP Claims against any Debtor.

          (ii)    *Allowance:* On the Effective Date, Prepetition Credit Agreement Secured Claims shall be Allowed.

          (iii)    *Treatment*: On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed Prepetition Credit Agreement Secured Claim, each Holder of an Allowed Prepetition Credit Agreement Secured Claim shall receive the following:

24

***Allowed General Unsecured Claim:*** The Lender will receive an Allowed General Unsecured Claim in the amount of Lender's Deficiency Claim, classified in Class 4 (General Unsecured Claims).

***Equity Distribution:*** The balance of the Lender's Secured Claims, in the approximate amount of $69,198,828, shall be cancelled, released, and discharged. In exchange, the Holder(s) of such claims shall receive 100% of the New Common Equity as of the Effective Date.

***Satisfaction of Claims:*** Upon the occurrence of the Effective Date and the implementation of the distributions described above, all obligations of the Debtor and any non-Debtor affiliates under the Prepetition Credit Agreement and related documents, shall be deemed fully satisfied, released, and discharged, and all related liens and security interests shall be automatically terminated and of no further force and effect.

***No Further Rights:*** Except as expressly provided in the Plan, the Holder(s) of Allowed Prepetition Credit Agreement Secured Claims shall not be entitled to any further or additional distribution or recovery on account of such claims.

(iv)     *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Prepetition Credit Agreement Secured Claims are entitled to vote to accept or reject the Plan.

(d)     Class 4 — General Unsecured Claims

(i)     *Classification*: Class 4 consists of any General Unsecured Claims against any Debtor and is divided into Class 4A and Class 4B.

(ii)     *Treatment*:

(1)     **Class 4A – All General Unsecured Claims**: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of its Allowed General Unsecured Claim, on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Class 4A Recovery Pool.

(2)     **Class 4B – General Unsecured Claims of Releasing General Unsecured Creditors**: On the Effective Date, each Holder of an Allowed General Unsecured Claim who affirmatively elects on its ballot to "opt in" to be a Releasing Party, and therefore consents to the Releasing Party Releases, will receive, on account of such Allowed General Unsecured Claim, its Pro Rata share of the Class 4B Recovery Pool. For the avoidance of doubt, its Pro Rata Share of the Class 4B Recovery Pool is in addition to, not instead of, its Pro Rata share of the Class 4A Recovery Pool.

(iii)     *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

(e)     Class 5 — Intercompany Claims

(1)     *Classification*:  Class 5 consists of any Intercompany Claims.

(2)     *Treatment*:  On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Intercompany Claim, each Allowed Intercompany Claim shall, at the election of the applicable Debtor, either be:  Unimpaired and Reinstated; or Impaired and cancelled and released without any distribution on account of such Intercompany Claim.

(3)     *Voting*:  Holders of Allowed Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

(f)     Class 6 — Intercompany Interests

(1)     *Classification*:  Class 6 consists of all Intercompany Interests.

(2)     *Treatment*:  On the Effective Date, Intercompany Interests shall be, at the option of the applicable Debtor (in consultation with the Lender), either: Reinstated in exchange for the Debtors' and the Reorganized Debtors' agreement to make distributions under the Plan; or discharged, cancelled, released, and extinguished and of no further force or effect without any distribution on account of such Intercompany Interests.

(3)     *Voting*:  Holders of Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

(g)     Class 7 —Interests in TopCo

(i)     *Classification*:  Class 7 consists of all Interests in TopCo.

(ii)     *Treatment*:  On the Effective Date, all Interests in TopCo shall be cancelled, released, discharged, and extinguished. Holders of Allowed Interests in TopCo shall not receive any distribution on account of such Allowed Interests in TopCo.

(iii)     *Voting*:  Class 7 is Impaired under the Plan.  Holders of Interests in TopCo are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Interests in TopCo are not entitled to vote to accept or reject the Plan.

**6.3     Prosecution of Preference Causes of Action**

Preference Causes of Action shall be prosecuted, if at all, by the Reorganized Debtors, as represented by attorneys pursuant to a contingent fee engagement agreement, which attorneys shall be selected by the Committee, in its sole and absolute discretion.  Neither the Debtors nor the Reorganized Debtors shall have any liability to pay any amount in respect of the prosecution of Preference Causes of Action, including but not limited to attorneys' fees and expenses.  Any settlement of any Preference Cause of Action of an amount greater than $25,000 shall be subject to the written approval of the Oversight Agent.

**6.4     Sale of Liquor Licenses**

The Debtors or the Reorganized Debtors, as the case may be, shall manage the sale of liquor licenses, in their own sole and absolute discretion and there shall be no guaranteed or otherwise represented minimum amount of Liquor License Proceeds.  The Debtors do not herein make any representation, warranty, promise or guarantee concerning the gross amount of Liquor License Proceeds to be divided between the Class 4A Recovery Pool and the Debtors or Reorganized Debtors, as the case may be.  The Debtors shall report the results of all sales of liquor licenses to the Oversight Agent.

**6.5     Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim.

**6.6     Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**6.7     Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

**6.8     Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under

27

general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## 6.9    Intercompany Interests

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests, but for the purposes of administrative convenience and to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors and Reorganized Debtors to the Holders of certain Allowed Claims.

## 6.10    Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## 6.11    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

ARTICLE VII

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

## 7.1    Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases shall be deemed **REJECTED**, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless an Executory Contract or Unexpired Lease:  (1) was assumed or rejected previously by the Debtors; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume filed on or before the Effective Date; or (4) is identified on the Assumed Executory Contract and Unexpired Lease List.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumption and assignment, or rejections, as applicable, of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumed Executory Contract and Unexpired Lease List, and the Rejected Executory Contract and Unexpired Leases List, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

## 7.2 Claims Based on Rejection of Executory Contracts or Unexpired Leases

**Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Claims Agent and served on the Reorganized Debtors no later than fourteen (14) days after the effective date of such rejection.**

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Claims Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.I of the Plan, notwithstanding anything in a Proof of Claim to the contrary, unless leave to File a late Claim is obtained.**

All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article III.B of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

### 7.3 Cure of Defaults and Objections to Cure and Assumption

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

No later than seven calendar days before the Confirmation Objection Deadline, the Debtors shall provide notices of proposed cure amounts to counterparties to Executory Contracts and Unexpired Leases, which shall include a description of the procedures for objecting to assumption thereof based on the proposed cure amounts or the Reorganized Debtors' ability to provide "adequate assurance of future performance thereunder" (within the meaning of section 365 of the Bankruptcy Code). Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served, and actually received by the counsel to the Debtors no later than the Confirmation Objection Deadline. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

In the event of a dispute regarding: (1) the amount of any payments to cure such a default; (2) the ability of the Reorganized Debtors or any assignee to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following either (a) the entry of a Final Order or orders resolving the dispute and approving the assumption or (b) the settlement of the dispute between the parties which may be entered into without further order of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. For the avoidance of doubt, assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not override or otherwise release any indemnification obligations in such Executory Contract or Unexpired Lease. Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed.

### 7.4 Insurance Policies

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed all insurance policies, as well as any agreements, documents, and instruments relating to such insurance policies or coverage of all insured claims. Nothing in the Plan, the Plan Supplement, the Confirmation Order, or any other order of the Bankruptcy Court (including any provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the

coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third-party administrators pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Reorganized Debtors) or draw on any collateral or security therefor.  For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

The automatic stay pursuant to section 362(a) of the Bankruptcy Code and the permanent injunction set forth in Article VIII.I, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit:  (1) claimants with valid direct action claims against any insurer of the Debtors under applicable non-bankruptcy law to proceed with their claims; (2) any insurer of the Debtors to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (a) all claims (i) where a claimant asserts a direct claim against any insurer of the Debtors under applicable law or (ii) that are subject to an order of the Bankruptcy Court granting the applicable claimant relief from the automatic stay or the injunction set forth in Article VIII.I to proceed with such claim and (b) all costs in relation to the foregoing; and (3) subject to the terms of the Debtors' agreement with any insurer of the Debtors and/or applicable non-bankruptcy law, any insurer of the Debtors to (i) cancel any policies under the Debtors' agreement with such insurer and (ii) take other actions relating thereto.

## 7.5     Director, Officer, Manager, and Employee Liability Insurance

Before the Effective Date, the Debtors have purchased and maintained directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date for the benefit of the Debtors' current and former directors, managers, officers, and employees on terms no less favorable to such persons than their existing coverage under the D&O Liability Insurance Policies with available aggregate limits of liability upon the Effective Date of no less than the aggregate limit of liability under the existing D&O Liability Insurance Policies.

After the Effective Date, the Reorganized Debtors may terminate or otherwise reduce the coverage under any such policies (including, if applicable, any "tail policy") with respect to conduct occurring after the Effective Date, and all officers, directors, managers, and employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy regardless of whether such officers, directors, managers, or employees remain in such positions after the Effective Date.

On and after the Effective Date, each of the Reorganized Debtors may purchase additional directors' and officers' liability insurance policy for the benefit of their respective directors, members, trustees, officers, and managers in the ordinary course of business.

## 7.6     Employee and Retiree Benefits

Except as otherwise provided in the Plan and notwithstanding the rejection of any such agreements, on and after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, amend, adopt, assume, and/or honor in the ordinary course of business any

contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plans, retention plans, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date; provided that the consummation of the transactions contemplated in the Plan shall not constitute a "change in control" with respect to any of the foregoing arrangements. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, may continue to be paid in accordance with applicable law.

**7.7    Modifications, Amendments, Supplements, Restatements, or Other Agreements**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**7.8    Reservation of Rights**

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtors, as applicable, shall have fourteen (14) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease effective as of the Confirmation Date.

**7.9    Non-Occurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

**7.10    Contracts and Leases Entered Into After the Petition Date**

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

ARTICLE VIII

**MEANS OF IMPLEMENTING THE PLAN**

In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for execution and implementation of the Plan.

**8.1    General Settlement of Claims and Interests**

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

**8.2    Restructuring Transactions**

On and after the Confirmation Date, the Debtors or Reorganized Debtors, as applicable, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan, which transactions may include, as applicable: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (a), pursuant to applicable state law; (d) the execution and delivery of any certificates or articles of incorporation, bylaws, or such other applicable formation documents (if any) of each Reorganized Debtor; (e) the execution and delivery of the New Organizational Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable), and the issuance, distribution, reservation, or dilution, as applicable, of the New Common Equity, as set forth herein; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

33

**8.3     Sources of Consideration for Plan Distributions**

The Debtors shall fund distributions under the Plan, as applicable, with: (i) as to the Class 4A Recovery Pool Account, (x) Cash in the amount of $25,000.00; (y) 45% of Liquor License Sale Proceeds; and (z) 100% of Preference Recoveries; (ii) as to the Class 4B Recovery Pool Account, Cash in the amount of $25,000.00; and (iii) the conversion of Secured Claims to New Common Equity to be issued pursuant to the Plan. Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance, distribution, or authorization, as applicable, of certain securities in connection with the Plan, including the New Common Equity, will be exempt from SEC registration, as described more fully below. Distributions from the Class 4A Recovery Pool Account shall be made quarterly, in consultation with the Oversight Agent, except where the balance of the Class 4A Recovery Pool Account is sufficiently small as to result in undue cost or burden to make such distributions.

**8.4     Issuance and Distribution of the New Common Equity**

On the Effective Date, the New Common Equity shall be issued and distributed to the Entities entitled to receive the New Common Equity pursuant to the Plan. The issuance of New Common Equity shall be authorized without the need for any further corporate action and without any action by the Holders of Claims or other parties in interest. All of the New Common Equity issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

Each distribution and issuance of the New Common Equity under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution, issuance, and/or dilution, as applicable, and by the terms and conditions of the instruments evidencing or relating to such distribution, issuance, and/or dilution, as applicable, including the New Organizational Documents, which terms and conditions shall bind each Entity receiving such distribution of the New Common Equity. Any Entity's acceptance of New Common Equity shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms. The New Common Equity will not be registered on any exchange as of the Effective Date.

**8.5     Exemption from Registration Requirements**

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Equity issued pursuant to the Plan is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities. The shares of New Common Equity to be issued under the Plan (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in Section 2(a)(11) of the Securities Act and in Section 1145 of the Bankruptcy Code.

**8.6     Corporate Existence**

Except as otherwise provided in the Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate limited liability company, with all the powers of a limited liability company, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is organized pursuant to the respective certificate of existence and articles of organization in effect prior to the Effective Date, except to the extent such certificate of existence and articles or organization are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

**8.7     Corporate Action**

On or before the Effective Date, as applicable, all actions contemplated under the Plan or the Plan Supplement shall be deemed authorized and approved in all respects, including: (i) adoption or assumption, as applicable, of the agreements with existing management; (ii) selection of the directors, managers, and officers for the Reorganized Debtors; (iii) implementation of the Restructuring Transactions; and (iv) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.F shall be effective notwithstanding any requirements under non-bankruptcy law.

**8.8     Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens securing obligations on account of Other Secured Claims that are Reinstated pursuant to the Plan, if any). On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**8.9     Cancellation of Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims shall be cancelled, and the obligations of the Debtors or the Reorganized Debtors and any non-Debtor Affiliates thereunder or in any way related thereto shall be discharged and deemed satisfied in full, and the Prepetition Administrative Agent shall be released from all duties thereunder; provided, however, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of a Holder of a Claim or Interest shall continue in effect solely for purposes of  allowing Holders of Allowed Claims to receive distributions under the Plan, provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable, except as expressly provided for in the Plan.

**8.10     Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the New Organizational Documents, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

**8.11     Exemptions from Certain Taxes and Fees**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Entity) of property under the Plan or pursuant to:  (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors, and the New Common Equity; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the

36

requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## 8.12    New Organizational Documents

Each Reorganized Debtor will file its New Organizational Documents with the applicable Secretary of State and/or other applicable authorities in its state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation, to the extent required for such New Organizational Documents to become effective.

## 8.13    Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all of the Debtors' rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity.  Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

## ARTICLE IX

## PROVISIONS GOVERNING DISTRIBUTIONS

## 9.1    <u>Timing and Calculation of Amounts to Be Distributed</u>

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim becomes an Allowed Claim or Interest) each Holder of an Allowed Claim or Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class and in the manner provided in the Plan.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such

payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Interests, distributions on account of any such Disputed Claims or Interests shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

## 9.2 Distributions on Account of Obligations of Multiple Debtors

For all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan; provided that Claims held by a single Entity against different Debtors that are not based on guarantees or joint and several liability shall be entitled to the applicable distribution for such Claim at each applicable Debtor. Any such Claims shall be released and discharged pursuant to Article VIII of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code. For the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay U.S. Trustee fees until such time as a particular case is closed, dismissed, or converted.

## 9.3 Distribution Agent

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtors on the Effective Date. The Debtors shall establish separate accounts for the Class 4A Recovery Pool Account and the Class 4B Recovery Pool Account and shall hold all funds therein pending distributions in accordance with the Plan.

## 9.4 Delivery of Distributions

(a)      Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Reorganized Debtors: (a) to the signatory set forth on any Proof of Claim or Proof of Interest filed by such Holder or other representative identified therein (or at the last known address of such Holder if no Proof of Claim or Proof of Interest is filed or if the Debtors have not been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors, after the date of any related Proof of Claim or Proof of Interest; or (c) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Subject to this Article VI of the Plan, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors and the Reorganized Debtors shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

(b)    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the later of (a) the Effective Date and (b) the date of the distribution.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

(c)    No Fractional Distributions

No fractional shares of the New Common Equity shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an applicable Allowed Claim would otherwise result in the issuance of a number of shares of the New Common Equity that is not a whole number, the actual distribution of shares of the New Common Equity shall be rounded as follows:  (a) fractions of one half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized shares of the New Common Equity shall be adjusted as necessary to account for the foregoing rounding.

**9.5**    **Manner of Payment**

At the option of the Distribution Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

**9.6**    **Compliance Matters**

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

**9.7**     **No Postpetition or Default Interest on Claims**

Unless otherwise specifically provided for in the Plan, the DIP Order, or the Confirmation Order, and notwithstanding any documents that govern the Debtors' prepetition indebtedness to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims and (2) no Holder of a Claim shall be entitled to:  (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate, as applicable.

**9.8**     **Allocation Between Principal and Accrued Interest**

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

**9.9**     **Setoffs and Recoupment**

Unless otherwise provided in the Plan or the Confirmation Order, each Debtor and each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled as of the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder.  In no event shall any Holder of Claims be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

**9.10**     **Claims Paid or Payable by Third Parties**

(a)     Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  To the extent that a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall repay, return, or deliver any distribution held by or transferred to the Holder to the applicable

Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

(b)     Claims Payable by Third Parties

The availability, if any, of insurance policy proceeds for the satisfaction of an Allowed Claim shall be determined by the terms of the insurance policies of the Debtors or Reorganized Debtors, as applicable. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed-upon satisfaction on the Claims Register by the Claims Agent without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(d)     Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE X

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

### 10.1    Allowance of Claims and Interests

After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order and the DIP Orders), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan, the Bankruptcy Code, or the Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Court pursuant to Bankruptcy Rule 9019 or otherwise, if any, shall be binding on all parties.

### 10.2    Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority to: (1) file, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim or Interest without

any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.L of the Plan.

## 10.3   Estimation of Claims and Interests

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

## 10.4   Adjustment to Claims Without Objection

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

## 10.5   No Distributions Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

## 10.6   Disallowance of Claims

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that are transferees of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action

against that Entity have been settled or a Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors.

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED.**

### 10.7 <u>Distributions After Allowance</u>

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

### 10.8 <u>Single Satisfaction of Claims</u>

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100% of such Allowed Claim plus interest, if applicable

### 10.9 <u>No Interest</u>

Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

ARTICLE XI

**EXCULPATION, RELEASES AND INJUNCTIONS**

### 11.1 <u>Exculpation</u>

**The Exculpated Parties will neither have nor incur any liability to any Entity for any Claims or Causes of Action for any act or omission occurring on or after the Petition Date and prior to or on the Effective Date in connection with, concerning or relating to the Chapter 11 Cases or the Plan, including any act or omission relating to (i) the commencement or administration of the Chapter 11 Cases, (ii) the negotiation or approval of any agreements or pleadings that were either filed with the Bankruptcy Court or otherwise relating to the Chapter 11 Cases, (iii) the formulating, negotiating, preparing, disseminating, implementing,**

43

administering, or effecting of the DIP Facility, the Asset Sales or the Plan, or (iv) soliciting or seeking confirmation of the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined by a Final Order of the Bankruptcy Court or other court of competent jurisdiction to constitute gross negligence, bad faith, or willful misconduct.

**11.2**   **Releases**

*Releases by the Debtors*. Upon the Effective Date, for good and valuable consideration including without limitation the concessions from Bar Louie in connection with the DIP Order and its contributions to the Class 4A Recovery Pool Account and the Class 4B Recovery Pool Account as set forth herein, to the fullest extent permissible under applicable law the Debtors release and discharge each of the Released Parties from any and all Claims, Causes of Action, or other Liabilities of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law or equity, existing or arising as of the Effective Date; *provided, however*, that the foregoing shall not release or discharge any Released Party from (i) any obligations arising under or relating to the Plan or the transactions contemplated herein, (ii) any liability for damages resulting from its gross negligence, bad faith, or willful misconduct, as determined by a Final Order entered by a court of competent jurisdiction, or (iii) any counterclaim or defenses in connection with any claim made against the Estates by any Released Party. Without limiting the foregoing, nothing herein shall alter in any way the releases contained in the DIP Order.  The Reorganized Debtors shall assume any and all federal, state or local income tax liabilities (including any penalties, interest or additions to tax),  imposed on Sole Member as a result of the Debtors' operations, the reorganization effectuated by consummation of the Plan or any of the transactions contemplated by the Plan (including the issuance of the New Common Equity to the Lender in satisfaction of any amounts owed to the Lender or the discharge or cancellation of any other indebtedness pursuant to the Plan).  In addition, the Reorganized Debtors shall control (at their expense) any audit, examination or other proceeding relating to the subject matter of the foregoing assumed tax liabilities.

*Releases by Releasing Parties*. Upon the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law the Releasing Parties release and discharge the Released Parties from any and all Claims, Causes of Action, or other Liabilities of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law or equity, existing or arising as of the Effective Date; *provided, however*, that the foregoing shall not release or discharge any Released Party from (i) any obligations arising under or relating to the Plan or the transactions contemplated herein, (ii) any liability for damages resulting from its gross negligence, bad faith, or willful misconduct, as determined by a Final Order entered by a court of competent jurisdiction, (iii) any counterclaim or defenses in connection with any claim made against the Estates by any Released Party; or (iv) any obligations arising under any agreement that the Released Party expressly agrees shall not be released or discharged pursuant to the Plan. Without limiting the foregoing, nothing herein shall alter in any way the releases contained in the DIP Order

*Releases by the Lender.* **Upon the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, the Lender, on its own behalf and on behalf of its Affiliates, and for its and their officers, directors, principals, shareholders, members, partners, managers, employees, attorneys, advisors, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, releases and discharges the Debtors, the Independent Directors and Officers, the Committee, and the Estates from any and all Claims, Causes of Action, or other Liabilities of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law or equity, existing or arising as of the Petition Date;** *provided, however,* **that the foregoing shall not release or discharge (i) any obligations arising under or relating to the Plan or the transactions contemplated herein, (ii) any liability for damages resulting from acts or omissions after the Petition Date by or on behalf of the Debtors and constituting gross negligence, bad faith, or willful misconduct, as determined by a Final Order entered by a court of competent jurisdiction, or (iii) any counterclaim or defenses in connection with any claim made against the Lender by the Debtors, the Estates.**

**11.3**    **Injunction**

    (a)    **From and after the Effective Date, through and until the date upon which all remaining property of the Estates that has vested in the Reorganized Debtors has been liquidated and distributed to Creditors or otherwise in accordance with the terms of the Plan, and the Plan has been fully administered, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved, all Entities who have held, hold, or may hold Claims or Interests that are satisfied, settled, resolved, released, extinguished, cancelled or terminated under the Plan or the Confirmation Order are permanently enjoined from taking any of the following actions against the Estates, the Released Parties, or any of their respective property or assets, solely with respect to any such Claims or Interests: (i) commencing or continuing, in any manner or in any place, any action or proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum); (ii) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing in any manner any Lien or encumbrance of any kind; and (iv) asserting any right of setoff, or any right of subrogation of any kind against any debt, liability, or obligation due to the Debtors, unless such right was formally asserted in a pleading Filed with the Bankruptcy Court prior to entry of the Confirmation Order or in a timely Filed Proof of Claim;** *provided, however,* **that such Entities shall not be precluded from exercising their rights under and consistent with the terms of the Plan or the Confirmation Order. Notwithstanding anything to the contrary herein, nothing in this Plan or the Confirmation Order shall modify the rights, if any, of any creditor under applicable bankruptcy law to assert setoff or recoupment as a defense to any Claim or Cause of Action by or on behalf of the Debtors, including, but not limited to, any rights under applicable bankruptcy law to assert setoff or recoupment as a defense in claims reconciliation, or the rights of the Debtors to object to any such assertion of setoff or recoupment.**

(b)     **Upon the entry of the Confirmation Order, all Holders of Claims and Interests shall be enjoined from taking any actions to interfere with the implementation or substantial consummation of the Plan by the Debtors.**

## 11.4     Protection Against Discriminatory Treatment

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## 11.5     Recoupment

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

## 11.6     Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## 11.7     Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

11.8    **Document Retention**

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

ARTICLE XII

**CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING**

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING THE RISK FACTORS SET FORTH HEREIN. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THESE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. FURTHER, THESE RISK FACTORS SHOULD NOT BE REGARDED AS THE ONLY RISKS ASSOCIATED WITH THE PLAN AND ITS IMPLEMENTATION.

12.1    **The Plan May Not Be Accepted**

There can be no assurances that the requisite acceptances to confirm the Plan will be received, and the Debtors would then need to solicit acceptances to a plan of liquidation or otherwise be forced into liquidation under chapter 7 of the Bankruptcy Code. There can be no assurance that any such alternative plan or process would yield results similar to or as favorable to Holders of Allowed Claims as those proposed in the Plan.

12.2    **The Plan May Not Be Confirmed**

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan or find that the Disclosure Statement contains adequate information and otherwise complies with the Bankruptcy Code. Even if the Bankruptcy Court determined that the Plan, Disclosure Statement, and balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation had not been met, including, but not limited to, the requirements for cramdown under section 1129(b) of the Bankruptcy Code. Such events could materially delay any Distributions and/or increase the attendant administrative costs such that recoveries on Allowed Claims may be reduced. Moreover, there can be no assurance that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Plan is not confirmed, it is unclear what Distributions would ultimately be received by Creditors with respect to their Claims in a subsequent plan or process.

### 12.3    The Plan May Require Modification

To the extent that the Bankruptcy Court finds that a different classification of Claims and Interests is required for the Plan to be confirmed, the Debtors may seek to (a) modify the Plan to provide for whatever classification might be required for confirmation and (b) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification.  Except to the extent that modification of classification in the Plan requires resolicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member. The Debtors believe that under the Bankruptcy Rules, they would be required to resolicit votes for or against the Plan only when a modification materially and adversely affects the treatment of the Claim or Interest of any Holder. To the extent that the Bankruptcy Court finds that the Plan does not satisfy the requirement that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest, the Bankruptcy Court could deny confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation of the Plan and could increase the risk that the Plan will not be consummated.

### 12.4    The Plan May Not Be Consummated

The Plan provides for certain conditions that must be satisfied (or waived) prior to confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived). Accordingly, there can be no assurance that the Plan will be confirmed by the Bankruptcy Court. Further, if the Plan is confirmed, there can be no assurance that the Plan will go effective.

### 12.5    Distributions Under the Plan May Be Inconsistent With Projections

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and of the funds that will be available for Distribution. The estimated amounts of Allowed Claims are based on certain assumptions with respect to a variety of factors, and there can be no assurance that the estimated Claim amounts set forth herein are correct. If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds available for Distribution to such Class are lower than the Debtors' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

## 12.6    Risks Associated with Forward Looking Statements

The financial information contained in the Plan has not been audited. In preparing the Plan, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have used their reasonable business judgment to ensure the accuracy of the financial information provided in the Plan, and while the Debtors believe that such financial information fairly reflects the financial condition of the Debtors, the Debtors are unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

## 12.7    The Plan May Result in Adverse Tax Consequences

There are a number of material tax considerations for any Holder in evaluating the Plan, and many of these tax considerations present potentially material risks. The discussion herein of any tax consequences is not tax advice. It is provided for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, is subject to substantial uncertainties.

No opinion of counsel has been sought or obtained with respect to any tax considerations or tax consequences of the Plan, and no tax opinion is being given in the Plan. No rulings or determinations of the IRS or any other tax authorities have been obtained or sought with respect to any tax consequences of the Plan, and the discussion below is not binding upon the IRS or any other authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Plan. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.

Any Holder may be liable for taxes on Distributions and may be deemed to have received Distributions without having received any Distribution in Cash. The tax treatment of Holders of Claims and the character, amount, and timing of income, gain, or loss recognized as a consequence of the Plan can vary depending on multiple factors, including but not limited to the following: (i) whether the Claim or portion thereof constitutes a Claim for principal or interest; (ii) the type of consideration, if any, received by the Holder in exchange for the Claim, and whether the Holder receives Distributions under the Plan in more than one tax year; (iii) whether the Holder is a citizen or resident of the United States for tax purposes, is otherwise subject to U.S. federal income tax on a net basis, or falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above; (iv) the manner in which the Holder acquired the Claim; (v) the length of time that the Claim has been held; (vi) whether the Claim was acquired at a discount; (vii) whether the Holder has taken a bad debt deduction or a worthless securities deduction (as applicable) with respect to the Claim or any portion thereof in the current or prior taxable years; (viii) whether the Holder has previously included in gross income accrued but unpaid interest with respect to the Claim; (ix) the method of tax accounting of the Holder; (x) whether the Claim is an installment obligation for U.S. federal income tax purposes; (xi) whether the Claim is considered a "security" for U.S. federal income tax purposes; and/or (xii) whether the "market discount" rules apply to the Holder. Furthermore, it is possible that the Debtors may incur tax penalties or obligations that materially reduce Distributions to Holders of Allowed Claims. In particular, the Debtors may be required to recognize cancellation of debt income in connection with the Sales. While the Debtors may have sufficient tax attributes, including net operating losses, to avoid

incurring a material cash liability, such result cannot be guaranteed at this time and may materially impact the outcome of the Plan for some or all Creditors.

The Debtors believe that it would be prohibitively expensive, unduly burdensome, and an inefficient use of the assets of the Estates to obtain conclusive tax guidance on such questions at this time. The Debtors therefore urge each Holder of a Claim or Interest to consult its own tax advisor regarding the federal, state, and other tax consequences of the Plan.

The discussion of the U.S. federal income tax consequences herein is based on the U.S. Tax Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions, and administrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the date hereof. Legislative, judicial, or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and considerations herein. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to the Holders of Claims. Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences for the Debtors, Holders, and the Plan generally.

THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE, OR LOCAL TAX CONSEQUENCES OF THE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGN ENTITIES, NONRESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH AS PARTNERSHIPS AND HOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S-CORPORATIONS, MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITIES TRADERS, BROKER-DEALERS, AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN, AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE NOT DISCUSSED HEREIN.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN AND OF THE TRANSACTIONS DESCRIBED HEREIN.

ARTICLE XIII

**CONFIRMATION AND VOTING PROCEDURES**

**13.1    Confirmation Procedures**

(a)    On June 12, 2025, the Bankruptcy Court entered an Order [D.I. 211] (the "**Interim Approval and Procedures Order**") approving (i) on an interim basis, the Plan as a disclosure

50

statement containing adequate information for solicitation purposes, and (ii) related solicitation and ballot tabulation procedures. The votes of all Creditors eligible to vote on the Plan are being solicited pursuant to the Interim Approval and Procedures Order.

(b)      The Confirmation Hearing has been scheduled for **July 24, 2025, at 10:00 a.m. (ET)** to consider (a) final approval of the Plan as a disclosure statement containing adequate information pursuant to section 1125 of the Bankruptcy Code, and (b) confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be continued or adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at a hearing or by Filing a notice with the Bankruptcy Court.

(c)      Any objection to the final approval of the Plan as a disclosure statement containing adequate information pursuant to section 1125 of the Bankruptcy Code, or confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, must be made in writing and Filed no later than **July 14, 2025, at 11:59 p.m. (ET)**. Any response or objection that is not timely Filed may not be considered by the Bankruptcy Court.

## 13.2    Confirmation Requirements

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Many of these requirements are designed to protect the interests of Holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court. Among other requirements, the Bankruptcy Court must find that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) the Plan complies with the requirements of Chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. The Plan must also (a) be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (b) must be feasible.

## 13.3    Classification of Claims and Interests

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders.  In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be and have not been classified). In addition, under section 1122 of the Bankruptcy Code, all Claims or Interests in any Class must be substantially similar to the other Claims or Interests in such Class. The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Debtors believe that the Plan complies with such standards.

Any Class of Claims or Interests that does not contain, as of the date of commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed for voting purposes under Bankruptcy Rule 3018, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of

determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

## 13.4   Impaired or Unimpaired Status

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in section 1124 of the Bankruptcy Code) under a chapter 11 plan may vote to accept or reject such chapter 11 plan. Generally, a claim or interest is impaired under a chapter 11 plan if the holder's legal, equitable, or contractual rights are changed under such chapter 11 plan. In addition, if the holders of claims or interests in an impaired class do not receive or retain any property under a chapter 11 plan on account of such claims or interests, such impaired class is deemed to have rejected such chapter 11 plan under section 1126(g) of the Bankruptcy Code and, therefore, such holders are not entitled to vote on such chapter 11 plan.

Any dispute as to whether any Claim or Interest is Impaired under the Plan shall be determined by the Bankruptcy Court on or before the Confirmation Date.

## 13.5   Acceptance; Cramdown

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan if it is accepted by at least one impaired voting class even if other impaired voting classes vote to reject it. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at a plan proponent's request, in a procedure commonly known as "cramdown," if the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan. See 11 U.S.C. § 1129(b).

(a)   **Unfair Discrimination**

Under section 1129(b)(1) of the Bankruptcy Code, a plan does not "discriminate unfairly" if (a) the legal rights of a nonaccepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the nonaccepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair," and the Bankruptcy Code allows wide latitude for separately classifying and treating claims of the same priority based on, among other factors, the differing factual or legal nature or attributes of the claims or their holders.

In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). The Debtors and the Committee believe that the proposed treatment of all Classes of Claims and Interests under the Plan does not discriminate unfairly against any Class.

(b)   **Fair and Equitable**

The "fair and equitable" test under section 1129(b)(1) and (2) of the Bankruptcy Code applies to classes of different priority and status, and includes the general requirement that no class

of claims receive more than 100% of the amount of the allowed claims in such class. To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes tests for secured creditors, unsecured creditors, and equity holders:

1.    *Secured Claims*. A plan is "fair and equitable" with respect to a non-accepting class of secured creditors if either (i) each holder of an impaired secured claim retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens, with such liens attaching to the proceeds of the sale and the treatment of such liens on proceeds is as provided in clauses (i) or (ii) above. *See* 11 U.S.C. § 1129(b)(2)(A).

2.    *Unsecured Claims*. A plan is "fair and equitable" with respect to a non-accepting class of unsecured creditors if either: (i) the plan provides that each holder of a claim in such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) the holders of claims and equity interests that are junior to the claims of the dissenting class will not receive or retain any property under the plan. *See* 11 U.S.C. § 1129(b)(2)(B).

3.    *Equity Interests*. A plan is "fair and equitable" with respect to a non-accepting class of equity interests if: (i) the plan provides that each holder of an interest in such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property. *See* 11 U.S.C. § 1129(b)(2)(C).

The Debtors believe that Plan satisfies the "fair and equitable" requirement because, for each Impaired Class that has not accepted the Plan, there is no Class of equal priority receiving more favorable treatment and no Class that is junior to such dissenting Class that will receive or retain any property on account of the Claims or Interests in such Class.

**13.6    <u>Feasibility</u>**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a chapter 11 plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Plan). In this case, the Plan contemplates the reorganization of the Debtors as a going concern, rather than a liquidation of all assets.

Under the Plan, the Debtors will emerge from chapter 11 with a deleveraged balance sheet, having restructured their prepetition secured obligations by equitizing the remaining balance of the prepetition secured claims in exchange for 100% of the new equity interests in the reorganized Debtors. The Reorganized Debtors will retain their assets and continue to operate their businesses, without the need for financing.

The Debtors, in consultation with their key stakeholders, have prepared financial projections and a business plan that demonstrate the reorganized Debtors' ability to meet their obligations as they come due and to operate as a viable enterprise post-emergence. The Plan provides for the satisfaction of all administrative, priority, and secured claims in accordance with the Bankruptcy Code, and the Reorganized Debtors will have sufficient capital structure and liquidity to meet their obligations and fund their business operations.

Based on the foregoing, the Debtors believe that confirmation of the Plan is not likely to be followed by the liquidation or further financial reorganization of the Debtors or any successor to the Debtors. Accordingly, the Debtors submit that the Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

## 13.7    **Best Interests**

Even if a plan is accepted by all voting classes, the Bankruptcy Code requires a court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires that, if any holders of claims or interests that are impaired by a chapter 11 plan have not accepted it, the chapter 11 plan must provide such holders with no less of a recovery on the impaired claim or interest than would be provided in a liquidation under chapter 7 of the Bankruptcy Code. If the recovery on such impaired claim or interest is greater in a hypothetical chapter 7 liquidation than under the chapter 11 plan, then the chapter 11 plan is not in the best interests of such holders of impaired claims or interests.

The Debtors expect the Plan will produce better recoveries for creditors and impaired claims than a hypothetical chapter 7 liquidation because of the additional costs that would be incurred in a hypothetical chapter 7 liquidation.  The Liquidation Analysis will be filed with the Plan Supplement.

A hypothetical chapter 7 liquidation would not provide this additional value for creditors. This contributes funding to the Class 4A Recovery Pool Account and the Class 4B Recovery Pool Account, reduces the potential claims pool, and avoids litigation costs, thereby increasing the potential of a successful liquidation effort and further distributions. A hypothetical chapter 7 liquidation would not provide this value for Impaired Creditors.

In addition, the costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as the costs of counsel and other professionals retained by the trustee. The Debtors believe such costs would exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtors. Conversion also would likely delay the  Distributions to Creditors.

Accordingly, the Debtors believe that Holders of Allowed Claims will not receive less under the Plan than in a hypothetical chapter 7 liquidation, and therefore that the Plan complies with section 1129(a)(7) of the Bankruptcy Code.

### 13.8    Solicitation Packages

The Solicitation Packages will contain: (a) the Plan; (b) the Interim Approval and Procedures Order, excluding the exhibits annexed thereto; (c) the Combined Hearing Notice; (d) an appropriate Ballot, including voting instructions to vote online through the E-Balloting procedure or by mail with a pre-addressed, postage-prepaid return envelope; and (e) such other materials as the Bankruptcy Court may direct.

Holders of Claims and Interests in non-voting Classes that are deemed to either accept or reject the Plan will receive packages consisting of: (a) the notice of the hearing on the Plan; (b) a notice of such Holder's non-voting status; and (c) such other materials as the Bankruptcy Court may direct.

### 13.9    Acceptance or Rejection of the Plan

The rules and procedures governing eligibility to vote on the Plan, solicitation of votes, and submission of ballots are set forth in the Interim Approval and Procedures Order.

Classes that are Unimpaired are presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes that are Impaired and that will not receive a Distribution or retain any property under the Plan are presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

At least one Impaired Class that will receive a Distribution must vote to accept the Plan for it to be confirmed.  Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if a majority in number and two-thirds in dollar amount of the Claims in such Class (excluding the votes of any insiders) has voted to accept the Plan.

**The Debtors recommend that all eligible Creditors vote to accept the Plan.**

IF YOU ARE A CREDITOR ELIGIBLE TO VOTE ON THE PLAN, PLEASE COMPLETE AND PROMPTLY SUBMIT YOUR BALLOT THROUGH THE E-BALLOTING PORTAL ON THE CASE WEBSITE OR BY MAIL. IF YOU DID NOT RECEIVE A BALLOT, RECEIVED A DAMAGED BALLOT OR LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE BALLOTING AGENT VIA EMAIL AT BarLouieInquiries@Stretto.com, TELEPHONE AT (833) 682-8977 (U.S./CANADA, TOLL-FREE) OR (949) 800-5913 (INTERNATIONAL), OR THROUGH THE CASE WEBSITE.

ONLY HOLDERS OF ALLOWED GENERAL UNSECURED CLAIMS WHO AFFIRMATIVELY ELECT ON THEIR BALLOTS TO "OPT IN" TO BE A RELEASING PARTY WILL SHARE IN THE CLASS 4B RECOVERY POOL.

### 13.10    Plan Amendment After Solicitation

The Plan is subject to amendment or modification as set forth herein and in accordance with the Bankruptcy Code. Such amendments or modifications could include reclassification of

any Claim, and any such reclassification could adversely affect Holders of Claims by changing the composition of one or more Classes and thereby affect the voting required of such Class or Classes for approval of the Plan.

EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH AMENDMENT OR MODIFICATION MATERIALLY AND ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED A MEMBER.

## ARTICLE XIV

## CONDITIONS TO THE EFFECTIVE DATE

### 14.1 Conditions Precedent to Confirmation

The following are conditions precedent to confirmation of the Plan, each of which must be satisfied or waived in accordance with Section 14.5 below:

(a)     The Plan, the proposed Confirmation Order, and documents in the Plan Supplement shall be in a form and substance reasonably acceptable to the Debtors and the Lender.

(b)     The Bankruptcy Court shall have entered a Final Order, in form and substance reasonably acceptable to the Debtors and the Lender, approving the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

(c)     The Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably acceptable to the Debtors and the Lender.

### 14.2 Conditions Precedent to the Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 14.5 below:

(a)     The Confirmation Order shall have become a Final Order and shall be in form and substance reasonably acceptable to the Debtors and the Lender.

### 14.3 Establishing the Effective Date

(a)     The Effective Date shall be the first business day after the date of satisfaction or waiver of all conditions to the Effective Date, or such later date as selected by the Debtors in consultation with the Committee.

(b)     Within two days after the Effective Date, the Debtors shall File a notice of occurrence of the Effective Date, which notice shall identify the applicable deadlines for filing

Proofs of Claim or requests on account of any Administrative Claim, Professional Claim, or Claim for any damages from the rejection of any Executory Contract or Unexpired Lease pursuant to the Plan.

## 14.4    Effect of Failure of Conditions

If the Effective Date has not occurred within 30 days after the Confirmation Date, unless extended by order of the Bankruptcy Court, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtors; (b) constitute a waiver or release of any Cause of Action by the Debtors; (c) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Holders of an Interest or any other Entity; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Committee, any Creditors, or any other Entity in any respect. In addition, the Debtors, the Committee, and all Holders of Claims against or Interests in the Debtors shall be restored to the status quo as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred.

## 14.5    Waiver of Conditions to Confirmation and Effective Date

Each of the conditions to the Effective Date may be waived, in whole or in part, upon agreement by the Debtors and the Lender, without notice or an Order of the Bankruptcy Court.

## ARTICLE XV

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, notwithstanding entry of the Confirmation Order, the occurrence of the Effective Date, or substantial consummation of the Plan, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including among other things jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(c)    hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

(d)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, the Retained Causes of Action, or the Plan;

(e)    enforce, interpret, and determine any disputes arising in connection with any Retained Causes of Action against any current or former directors or officers and access to any Insurance Policies;

(f)    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(g)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(h)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Confirmation Order;

(j)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(k)    enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(l)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(m)    enter orders closing any of the Chapter 11 Cases.

## ARTICLE XVI

## **MISCELLANEOUS PROVISIONS**

### 16.1    **Injunctions or Stays**

All injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise as of the Confirmation Date shall cease as of the Effective Date. From and after the Effective Date, all injunctions or stays contained in the Plan or the Confirmation

Order shall be in full force and effect in accordance with their terms. Nothing herein shall be otherwise deemed to modify, limit, amend, or supersede any injunction granted in any Sale Order.

**16.2** **Amendments**

The Debtors, with the written consent of the Lender, may amend or modify the Plan at any time prior to the entry of the Confirmation Order, or after entry of the Confirmation Order upon notice and a hearing, provided that the Plan, as amended or modified, satisfies all applicable Bankruptcy Code requirements for confirmation and for disclosure statement purposes and does not materially and adversely change the treatment of any Class. Any Holder of a Claim that has voted to accept the Plan shall be deemed to have accepted the Plan as amended or modified, if the proposed amendment or modification does not materially and adversely change the treatment of the Claim of such Holder, unless the Bankruptcy Court orders otherwise.

**16.3** **Severability**

In the event that any provision of the Plan is determined to be invalid, void, or unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provision of the Plan.

**16.4** **Notices**

All notices, requests, and demands to or upon the Debtors, as applicable, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as shall be set forth in the notice of occurrence of the Effective Date.

**16.5** **Creditor Noticing**

After the Effective Date, any Entities that want to continue to receive notice in these Chapter 11 Cases must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002; *provided, however*, that the United States Trustee and the Lender shall be excused from this requirement and shall remain on the Bankruptcy Rule 2002 service list. The Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to such Entities that have filed a renewed service request, the United States Trustee, and all parties directly affected by the relief sought in any filing.

**16.6** **Governing Law**

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

**16.7    Controlling Interpretation**

The Plan shall control in the event of any inconsistency with the Plan Supplement, except to the extent that the Plan Supplement expressly states that a specific provision controls. The Confirmation Order shall control in the event of any inconsistency with the Plan, Plan Supplement, or any other agreement, exhibit, or document.

**16.8    Plan Supplement; Exhibits and Schedules**

The Debtors shall file the Plan Supplement and such other agreements, exhibits, or other documents as reasonably necessary or appropriate to effectuate and further evidence the Plan, no later than **July 7, 2025**. All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

**16.9    No Admissions**

Notwithstanding anything herein to the contrary, except with respect to any Claim that is expressly Allowed under the Plan, nothing contained in the Plan shall be deemed as an admission or waiver by the Debtors with respect to the validity or amount of any Claim. No statement or provision contained herein, or the taking of any action by the Debtors or the Committee with respect to the Plan, shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or the Estates.

**16.10    Binding Effect; Successors and Assigns**

The Plan shall be binding on the Debtors, the Estates, and all Creditors from and after the Effective Date. The rights, benefits, and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**16.11    Immediate Effectiveness**

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable under the Bankruptcy Rules.

**16.12    Final Decree**

On or after the Effective Date, the Reorganized Debtors shall have the power and authority to file a motion with the Bankruptcy Court seeking the entry of a Final Decree closing any of the

Chapter 11 Cases in accordance with section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

Dated: June 13, 2025

**BLH TOPCO LLC AND ITS**
**AFFILIATED DEBTORS**


*/s/ Leslie Crook*
Leslie Crook
Chief Administrative Officer